## Bank of Pennsylvania *against* Potius.

The acceptance by a creditor of a bond and mortgage, payable at a future day, for the amount of an execution in the hands of the sheriff, is not, *ipso facto,* a stay of the execution; and in an action by the plaintiff against the sheriff or his sureties for not levying and making the debt out of the defendant's personal property, the burthen of proof to show that the plaintiff did agree to stay the execution, lies upon the sheriff, and he must establish it clearly, in order to exonerate himself and sureties from liability.

If sureties be compelled to pay a debt, by reason of the neglect of the sheriff to collect it from the principal defendant, they will have a right of action against the sheriff and his sureties on his official bond: but if in such case they omit to sue the bond, until the lapse of time has barred an action upon it, they will not be entitled to substitution, in an action by the original plaintiff to recover a balance of the debt still unpaid to him. There can be no such thing as substitution to the rights of a party who is not wholly satisfied.

ERROR to the common pleas of *Union* county.

The Commonwealth for the use of the Bank of Pennsylvania against Frederick Potius. This was an action of debt upon the official bond of John Cummings, sheriff of Union county, in which the defendant was a surety.

The plaintiff claimed the amount of a balance due upon four writs of *fieri facias,* issued at the suit of the Bank of Pennsylvania against M. J. App, amounting to about 2000 dollars.

[Bank of Pennsylvania v. Potius.]

After the plaintiff had given in evidence the executions, he proved that M. J. App, the defendant, had in his possession personal property to an amount more than sufficient to pay them, which had been sold, carried off, and squandered by the defendant, after the executions came to the sheriff's hands. It appeared, also, that after this suit was brought, the bank had proceeded against the sureties of M. J. App, and collected a part of their debt from them, so that it only claimed for itself to recover in this suit a balance of 117 dollars 16 cents. But the sureties, who were endorsers, to the bank, of M. J. App, and who had paid the whole debt, except the above balance of 117 dollars 16 cents, came in, by consent of the plaintiff, and claimed, by way of substitution, to recover in this action the whole amount of the original debt, for which the executions came to the hands of the sheriff.

The defendant set up as a defence, and proved, that when the writs of *fieri facias* were in the hands of the sheriff, the plaintiff accepted from the defendant, M. J. App, a bond and mortgage for the whole amount of the executions, dated September 29, 1832, payable in four, eight, and twelve months: and in order to show the terms upon which this mortgage and bond was given, he called:

H. W. Snyder who, being sworn, said—After September court, 1832, Mr Bellas sent me that mortgage in a letter, in which he desired me, so far as I recollect, to have the same executed by App. He did not hesitate about it, but went with me to Squire Feehrer and executed it. He made light of it, saying he could and would pay it in a short time. I do not remember what was said about the time. When the mortgage was executed, I returned it to Mr Bellas. I do not recollect whether I did show App the letter or not. I do not know whether I said any thing about time or not; but I think App spoke in reference to it. I think he said he would be able to pay the money before the expiration of a year. I cannot remember what I said to that. Do not know that I said any thing about the mortgage being given up if paid within the year. I can not say that he read the mortgage. I can not say that the letter contained any thing about a previous arrangement. I do not know what the mortgage was given for, only from what appears on it. I know of no money paid. Any thing I said must have been from what was on the face of the mortgage.

The assent of the plaintiff to the substitution of the endorsers was dated February 11, 1839, which was more than five years after they had paid the money to the bank.

There were a number of bills of exception to the admission and rejection of evidence during the trial, but none of them involving any legal principle.

The court below (Lewis, president) submitted to the jury, as a matter of fact, whether the bond and mortgage were taken by the plaintiff to relieve the defendant, App, from the writs in the hands of the sheriff, and with a view of giving him the time mentioned for the payment of the debts, or whether they were given as mere col-

lateral security, instructing them, that if the former were the object of the parties, it was a release of the sheriff, and the plaintiff would not be entitled to recover in this action; but if the latter, it would not affect the plaintiff's right to recover. As to the substitution of the endorsers, the court was of opinion that it could not be allowed; and that the bank was only entitled to recover, if at all, the balance which remained unpaid to it.

*Bellas,* for plaintiff in error, on the subject of the endorsers' right to substitution, and a recovery by them in this action, cited 6 *Watts* 226; 1 *Dess. Rep,* 409; 2 *Rawle* 128; 1 *Johns. Cha. Rep.* 409; 2 *Johns. Cha. Rep.* 560; 4 *Johns. Cha. Rep.* 123, 530, 545; 10 *Johns.* 524; 2 *Johns. Cas.* 227; *Story's Eq.* 471, *sect.* 493. On the subject of the duty of the sheriff, he cited 1. *Wash. C. C. Rep.* 29; 16 *Johns.* 287; 10 *Wend.* 267; 15 *Johns.* 456.

The counsel for the plaintiff in error also contended, that there was no evidence which justified the court in submitting it to the jury to find, whether the plaintiff in the executions had made any agreement to stay them: that the mortgage was taken as collateral security for the payment of the debt, and for no other purpose.

*Merrill,* for defendant in error, contended that the court below had properly submitted the fact to the jury, and that the sheriff had not violated his duty; and cited on this point 7 *Law Lib.* 47; *Watson on Sheriffs; 3 Whart.* 257; 6 *Watts* 76; 2 *Watts* 45; 5 *Watts* 229; 2 *Watts* 414; 4 *Watts* 24; 6 *Watts* 227.

The opinion of the court was delivered by

Rogers, J.—The court charged the jury, that taking the bond and mortgage did not of itself amount to an extension of the time of payment of the execution, and that the sheriff was not thereby discharged, nor the plaintiff barred in his action. But if they were taken upon an agreement to extend the payment of the execution in the hands of the sheriff until the time mentioned in the mortgage, the sheriff would be discharged from proceeding further on the writs, and the defendant, as surety, would likewise be discharged. To this part of the charge, in the abstract, no reasonable objection can be made; for the execution of the bond and mortgage is but a collateral security, and as such does not amount to a satisfaction of the debt, nor to an agreement for a stay of execution. In Sterling v. Weakly, 9 *Watts* 273, the principle was ruled, that a surety was not discharged by a collateral undertaking, but that the principal might proceed against his debtor before the time expired when the additional security became payable. If there was a special contract, by which the plaintiff agreed to delay proceeding with his execution, it would relieve the sheriff from liability, but such an agreement cannot be inferred on slight or doubtful grounds. It was the duty of the sheriff to make the money according to the command of his writ, and when he asks to be discharged from the liability

created by an omission to perform his duty, he should be prepared with clear and explicit proof of the facts on which he relies. Unless this rule is strictly observed, the rights of creditors will be in great jeopardy. The rule exacts nothing, but what the sheriff can easily comply with, and which is moreover absolutely necessary to protect the interests of others. As it is, *prima facie*, a collateral security, the burthen of proof, to extend its operation beyond its legitimate limits, is thrown upon the sheriff, and hence it is necessary for the defence of his surety to show a special contract, and the nature and extent of it. Ordinary care and diligence on the part of the sheriff, will in all cases protect him against the possibility of risk. The plea avers that the plaintiff took the bond and mortgage in satisfaction of the executions, and that the plaintiff extended the time of payment, and agreed to receive the same in instalments, &c., and that he discharged the sheriff from executing the said writs and process, and proceeded on the mortgage, and sold the house and lot, &c. Of these material averments, there is no proof whatever, certainly not such as the law requires. H. Snyder, who was agent of Mr Bellas for the special purpose only, so far as appears, of procuring the execution of the bond and mortgage by App, does not recollect distinctly what was said as to the time allowed for payment of the money. He fails altogether to prove any contract or agreement to stay the execution. To arrest the due course of law on such loose and indefinite recollections, would be attended with the most disastrous consequences to creditors. No prudent sheriff would delay the execution of his writ with no better warrant; and if, in this case, he omitted to proceed to collect the debt on such representations, he may charge the loss to the account of his own folly. There is nothing in the evidence which would enable the defendant to claim an exemption of his goods from the ordinary operation of an execution, duly placed in the hands of the sheriff.

It further appears from the evidence, that no reasonable doubt can be entertained that the personal estate of the defendant was amply sufficient to pay the debt, and the jury would be justified in coming to the conclusion, that the debt has been lost by the culpable negligence of the sheriff. It is nothing to the purpose that the defendant is a surety, as he stands in this particular in the place of his principal, with the same responsibilties as the sheriff himself.

It is insisted that the court erred in instructing the jury, that the bank cannot recover in this action, for the use of other persons as well as itself, on principles of subrogation. The bank can only recover, as the court truly say, on its own rights and equities. The suit was brought for the use of the bank alone, to the September term 1836, and all the breaches in the declaration are assigned to the damage of the bank. Afterwards, viz. February 11, 1839, the cashier of the bank agrees, on behalf of the bank, that any of the endorsers of Mr J. App, the defendant, or his co-endorsers, who may have paid money for him to the bank, be respectively sub-

[Bank of Pennsylvania v. Potius.]

stituted for so much as they may have paid, and be entitled to re-
cover it back from the defendant, without prejudice to the rights of
the bank, for so much as still remains due to it, or affecting its rights
or liabilities in any way whatever.   If the endorsers here have
been compelled to pay money to the bank, they undoubtedly have
an interest in the action of the sheriff on the writ of execution in
his hands, and no difficulty is perceived in their indemnifying them-
selves, if injured by the neglect of the sheriff, by a suit on the bond
for their use, against the sheriff and his sureties.   There would,
therefore, seem to be no necessity of resorting to the doctrine of
substitution for the relief of the endorsers who may have been
forced to pay the debt of their principal.   But be this as it may,
yet there are objections to the substitution claimed, arising in this
case out of the act of limitations, which cannot, as I can perceive,
be surmounted.   The money, as clearly appears, was paid by the
endorsers to the bank, more than five years before the attempt at
substitution, and this, of itself, forms a good defence for the sureties
on the sheriff's bonds.   That a substitution cannot, under such cir-
cumstances, be permitted, is ruled in French v. Mehaffy, 8 *Watts*
384.   The doctrine of substitution being one of mere equity and
benevolence, will not be enforced at the expense of a legal right; a
surety, therefore, as is there held, whose claim against his principal,
for money paid on a judgment against them, has been defeated at
law, cannot be substituted for the plaintiff in the original judgment.
On the same principle he cannot be substituted where his claim is
barred by the act of limitations.   It would be unjust to deprive the
sureties of a defence which would be available if the endorsers are
put to a suit on the sheriff's bond.   There is another objection
equally fatal to the claim of substitution.   The doctrine of substitu-
tion only applies where the principal has been wholly paid.   It
cannot be permitted where he has been in part only.   Thus, in
Kyser v. Kyser, 6 *Watts* 221, it is ruled, that there can be no
such thing as substitution to the right of a party who is not wholly
satisfied.   The court cannot interfere with his security while a part
of the debt remains unpaid.   Judge Kennedy, who delivered the
opinion, remarks, that until the plaintiff is wholly satisfied there
ought and can be no interference with his rights, or his securities,
which might even by bare possibility prejudice or embarrass him
in any way in the residue of his claim.   But the rule is adopted not
only for the benefit of the plaintiff, but the defendant also ought
not to be subjected to the inconvenience which must arise from the
trial of several rights in one action, and the rendition of several
and distinct judgments.   We cannot, therefore, believe that the
consent of the plaintiff can alter the case, particularly as the en-
dorsers here may bring suit on the bond.

We have examined the second bill of exceptions, in which we
are not sensible the court have erred.   The evidence has some
although perhaps not a material bearing on the issues.

Judgment reversed, and a *venire de novo* awarded.