# Mobile & Montgomery Railway Co. v. Brewer.

*Action against Surety on Penal Bond, for Default of Principal.*

1. *Appointment of agent; duration of appointment, and liability of sureties for default.*—When an agent of a private corporation is appointed for a specified term, and gives bond for the faithful performance of his duties under his appointment, his sureties are not liable for defaults committed after the expiration of that term, and while he was acting under a re-appointment; but, where the appointment is temporary and experimental, a right to revoke it being expressly reserved, and no term is specified for its duration, while the bond is conditioned for the faithful discharge of the duties of the office " during the time he holds said appointment, and until he is relieved therefrom," the liability of the sureties continues until the appointment is revoked, either expressly, or by the acceptance of a new appointment.

2. *Discharge of surety, by extension of debt without his assent.*—Any extension of the debt by the creditor, for valuable consideration, without the consent of the surety, discharges the latter from liability; but taking the principal debtor's note for a debt past-due, payable one day after date, is not an extension of the debt; and taking a mortgage to secure the payment of such note, does not postpone the day of payment, affect the right to sue on the note, or discharge the surety.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. WM. E. CLARKE.

This action was brought by the appellant, a domestic corporation, against Thomas P. Brewer, and was founded on a penal bond executed by the defendant as surety for one R. P. Priester, which was dated June 1st, 1877, and conditioned as follows: "Whereas the above-bound R. P. Priester has been, by said Mobile & Montgomery Railway Company, appointed freight-agent at Mobile Station, which appointment has been accepted by said R. P. Priester; now, then, if the said R. P. Priester shall, during the time he holds said appointment, and until he is relieved therefrom, well, truly and faithfully discharge all the duties of his said appointment, and account for and pay over all moneys or property that may come into his possession, to or for the use of said Mobile & Montgomery Railway Com-

[Mobile & Montgomery Railway Co. v. Brewer.]

pany, and faithfully obey all the rules and regulations of said company, and all orders issued by authority of said company; then, and in that case, these presents, and all contained therein, shall be null and void; otherwise to remain," &c.

The original complaint contained a single count, which averred, as a breach of the bond, that the said Priester "did not account for, and pay over to plaintiff, $10,000 of money, which came to his possession, to or for the use of said plaintiff;" but an amended complaint was afterwards filed, containing four special counts, which averred, as breaches of the bond, said Priester's failure to pay over money which he had collected as plaintiff's agent, his failure to account for property which went into his possession as such agent, his failure to collect bills which went into his hands for collection, whereby the freight and charges due, as therein specified, were wholly lost to plaintiff, &c. Eleven pleas were filed by the defendant, which presented in substance, though differing in form, three defenses: 1st, a general denial of any default committed by Priester, during the period covered by the bond; 2d, an averment that Priester's appointment as agent, during the time covered by the bond, was only temporary, and was terminated and revoked by a subsequent re-appointment at a higher salary; and, 3d, an extension of the debt or default, by plaintiff's acceptance of a note and mortgage from Priester, after the default had occurred, without the defendant's knowledge or assent. Demurrers were filed to several of these pleas, and special replications to others; and the rulings of the court on these special pleadings, adverse to the plaintiff, are made the foundation for eleven of the twenty-two assignments of error; but a full statement of the pleadings is not necessary to an understanding of the points decided by this court.

It was shown that said Priester was appointed freight-agent at Mobile for the plaintiff, by E. L. Tyler, the vice-president and acting superintendent, in the latter part of May, or the first of June, 1877, and that he continued in the discharge of the duties of the office, until the 10th or 11th October, 1879, when a "shortage" of over ten thousand dollars was discovered in his accounts, and he fled from the State. As to the terms of his appointment, said Tyler, whose deposition was taken by the defendant, thus testified: "I was appointed vice-president of said railway company in April, 1877, the duties of general superintendent also devolving on the vice-president; and I held the position until March, 1880. I became acquainted with him [Priester] when I took charge of the road, and my acquaintance with him was the same as with the other employees of the road. Some time in or about May, 1877, I appointed him freight-agent at Mobile. The office was about to become

vacant by the resignation of Mr. Pegram, the former agent. The resignation took effect the same day as Priester's appointment, and he was appointed for the purpose of relieving Pegram. He had been working in the freight-office at Mobile, under Pegram; and I sent for him to come to Montgomery, and said to him, as nearly as I can recollect, that I would appoint him Pegram's successor, but with the understanding that the appointment should be considered an acting one, until such time that I was thoroughly satisfied he was competent to fill the position. I had full authority to fill the position, without reference to the president or board of directors. . . I have no recollection of any conversation with him as to his salary, and do not remember how much he got, or was to get; but the pay-rolls of the company will show, as all salaries were paid up in full monthly. . . I have no recollection of any conversation with him relative to his giving a bond. It was the rule of the road, that all agents should give bonds, graduated in amount according to the business expected to be transacted at the station. The bond was prepared by either the auditor or the treasurer. I do not know who handed it to Priester or his sureties, and can not say how long he retained it. It was eventually returned to me, and handed by me to the auditor for safe-keeping; but was never laid before the board of directors, so far as I know. I was authorized to accept it."

Priester himself, whose deposition was twice taken by the defendant, thus testified: " During the latter part of May, 1877, I was notified to report to Capt. E. L. Tyler, vice-president of said railway company, at Montgomery. I did so, and was told by him that Mr. Pegram, the agent at Mobile, had resigned, and that I had been suggested as a suitable person to fill the vacancy. He then told me that he would appoint me temporary agent, or acting agent, until such time as he was satisfied that I was fully competent to fill the position, when he would make the appointment permanent. After some further talk, about wages, &c., I left him. I took charge of the office, I think, on the 1st June, 1877. . . I told Mr. Brewer and Mr. Hurst, at the time they signed the bond, that it was only for a temporary appointment, but that I expected to be appointed permanently after awhile, and thought it would be necessary for me to give a new bond. . . As to the amount of salary I received at first, I am not positive, but it was at the rate of $1,500 or $1,600 *per annum;* and it remained at that figure until July, or August, when I was paid at the rate of $2,000 *per annum.* I think it was in July, 1877, that I had a talk with Capt. Tyler, regarding my position, and the amount I was to receive. I remember distinctly telling him, that if I was competent, and gave satisfaction, I wanted

as much money for my services as was paid to Mr. Pegram—
that is, $2,000. He answered, ' *We will make that all right,*'
or words to that effect. I never wrote to Capt. Tyler regarding
the changing the nature of my appointment, nor did he write
to me on the subject. On or about the 15th of the month fol-
lowing [said conversation], and afterwards, I was put down on
the pay-roll at $166.66, and received that amount monthly."

Priester was arrested in New Orleans, on the day after his
flight, and was brought back to Mobile; and on the 13th Octo-
ber, 1879, while under arrest, he executed to the plaintiff a
mortgage of a house and lot in the city of Mobile, in which
his wife joined with him, and which contained the following
condition: " *Whereas* the said R. P. Priester is indebted to the
said Mobile & Montgomery Railway Company in a large sum,
the amount of which has not been ascertained with accuracy,
but which is admitted to be greatly in excess of the value of
the above-described property; now, therefore, should the said
R. P. Priester make good his said debt in ten days from date
hereof, then this instrument to be void; otherwise, the said
Mobile & Montgomery Railway Company may, through its
agents, enter and take possession of said property, and sell the
same, at public or private sale, and credit the proceeds thereof
upon the account of said R. P. Priester. Witness our hands,"
&c. On the same day, Priester also executed to the plaintiff a
mortgage of certain personal property, as follows: " *Whereas*
I am indebted to the Mobile & Montgomery Railway Company
in a large sum, not now accurately ascertained; now, for repay-
ment of said sum in part, I hereby sell and convey to said Mo-
bile & Montgomery Railway Company all my household furni-
ture now in my dwelling; said property to be taken on the
same conditions as my house has this day been conveyed on;
also, all the money now in the hands of Wm. H. Williamson,
belonging to and taken from me, except $1,200 which he is to
hold subject to further action; also, all moneys due to me and
in the People's Savings Bank; also, my two drays and mules,
and my large double wagon. All said property to be taken by
said company, and converted into money, and credited on my
said debt to said Mobile & Montgomery Railway Company."

Exceptions were duly reserved by the plaintiff to several rul-
ings of the court below in the rejection of evidence, and these
several rulings are here assigned as error; but, as they are not
specially noticed by this court, it is unnecessary to state them.

In the general charge to the jury, the court used this lan-
guage: " *Defendant says, that Priester gave plaintiff a con-
veyance, to which this condition was annexed,*" quoting the
words of the condition of the mortgage. " *Defendant says,
that was an extension of the debt. This is for you to say.*"

To this portion of the charge an exception was reserved by the plaintiff, and also to the refusal of a charge asked, which instructed the jury that the conveyances above set out "do not give time to said Priester for the payment of such amount as he may have owed said company, so as to discharge the sureties from any liability they may have been under to said company at the time by reason of the bond now in suit; nor does either of said conveyances have that effect."

Exceptions were also duly reserved by the plaintiff to several charges given by the court at the instance of the defendant, among which were the following:

"If the jury believe, from the evidence, that Priester was appointed plaintiff's acting agent at Mobile Station, and was to hold such appointment until E. L. Tyler, the vice-president of said company, became thoroughly satisfied that he was competent to fill the place; and if they find, from the evidence, that he did become thoroughly satisfied with the competency of said Priester at the time his salary was raised, and that the bond was given for that appointment only; then the liability on said bond ceased from the time the evidence shows that his wages were raised."

"If the jury believe, from the evidence, that Priester was appointed plaintiff's acting feight-agent at Mobile Station, until such time that E. L. Tyler, vice-president of said company, was thoroughly satisfied he was competent to fill the position; and if they further believe, from the evidence, that said Tyler afterwards became satisfied that he was competent to fill the position; and that defendant signed said bond for said Priester as acting agent only; and that the plaintiff afterwards raised the salary of said Priester, and intended thereby to make said appointment permanent, and to terminate said appointment of acting agent; then they must find for the defendant, unless the evidence satisfies them that the alleged default occurred during such acting appointment."

The adverse rulings of the court on the pleadings and evidence, the charges given, and the refusal of the charges asked, to which exceptions were reserved, are now assigned as error.

G. L. SMITH, for appellant.—(1.) The condition of the bond binds the defendant as surety for Priester's faithful performance of the duties of freight-agent at Mobile, "during the time he holds said appointment, and until he is relieved therefrom;" and whether the appointment was temporary or permanent, the surety is estopped from denying his liability for defaults committed during the time covered by the condition.— *Williamson & McArthur v. Woolf*, 37 Ala. 303. (2.) It was the duty of the court to construe the mortgages executed by Priester to the

plaintiff, and to instruct the jury as to their legal effect; and the court erred in submitting this question to the jury, as was done in the general charge given.—*Price v. Mazange*, 31 Ala. 701; *Taylor v. Kelly*, 31 Ala. 59. (3.) The error of this charge can not be said to be error without injury, on the ground that the court ought to have construed the mortgages against the plaintiff; for they do not extend the payment of the debt, though giving time before the property can be sold, the value of which is stated and shown to be much less than the amount of the debt; and the acceptance of such an instrument does not discharge the surety, though made without his consent.—Brandt on Sureties, § 320; *Burke v. Kruger*, 8 Texas, 66; *Pendexter v. Vernon*, 9 Humph. 84; *Bank of Penn. v. Potius*, 10 Watts, 148; *Morgan v. Martein*, 32 Mo. 438; *Oxley v. Storer*, 54 Ill. 159; *Williams v. Townsend*, 1 Bosw. N. Y. 411; *Brengle v. Bushey*, 40 Md. 141; *Thurston v. James*, 6 R. I. 103; *Headlee v. Jones*, 43 Mo. 235; *Scanland v. Settle*, Meigs, Tenn, 169; *Twopenny v. Young*, 3 B. & C. 208.

L. H. FAITH, and OVERALL & BESTOR, *contra.*—(1.) The sureties on the bond were only bound for Priester's acts under his "said appointment," the term or duration of which, not being stated in the bond, might be shown by parol.—*Kitson v. Julian*, 4 El. & Bl. 854; *Insurance Co. v. Clark*, 33 Barb. 196; *Hassell v. Long*, 2 M. & S. 370; *Montgomery v. Hughes*, 65 Ala. 201; *Rapier v. Insurance Co.*, 57 Ala. 100; *Holland v. Lea*, 9 Exch. 430; *Railway Co. v. Whinray*, 10 Exch. 77; *Commonwealth v. Fairfax*, 4 H. & M. 208; *So. Car. Society v. Johnson*, 10 Amer. Dec. 644; *Brewer v. King*, 63 Ala. 511. The temporary appointment being terminated by the permanent appointment at an increased salary, the liability of the sureties ceased before any default occurred. (2.) The conveyances executed by Priester give time for the payment of the debt, and, being executed without the assent of the sureties, discharged them.—*Gray's Executors v. Brown*, 22 Ala. 262; *White v. Life Association*, 63 Ala. 419; *Insurance Co. v. Randall*, 71 Ala. 220; *Comegys v. Cox*, 1 Stew. 262; *Ellis v. Bibb*, 2 Stew. 63; *Inge v. Br. Bank*, 8 Porter, 108; *Cox v. Railroad Co.*. 37 Ala. 320; *Pyke v. Searcy*, 4 Porter, 52; *Haden v. Brown*, 18 Ala. 641; *Carpenter v. Devon*, 6 Ala. 718; *Boultbee v. Stubbs*, 18 Vesey, 20; *Ducker v. Rapp*, 67 N. Y. 464; *Place v. McIlvain*, 38 N. Y. 96; *Smarr v. Schnitter*, 38 Mo. 478; *Lea v. Dozier*, 10 Humph. 447; *Smith v. Clopton*, 48 Miss. 66; 14 Gray, 528; 3 Allen, 14; 5 Cush. 43; 10 Paige, 11; 78 Ill. 257.

STONE, C. J.—We have examined the evidence in this cause with great care, and we fail to find any thing which tends, in the least, to show that Mr. Priester received more than one appointment as freight agent of the appellant corporation. Giving to Priester's testimony the extremest interpretation, the appointment was experimental, with a reserved right to revoke, of which notice was given at the time. The experiment proved satisfactory, and there was no revocation and no reappointment. The bond, therefore, stands as a guaranty that he will faithfully discharge the duties of the office, or trust committed to him, "during the time he holds the said appointment, and until he is relieved therefrom." We will not gainsay the position contended for, that the appointment might have been for a specified time, or term. The charter, or by-laws of the corporation, might have required that, or the appointing power might have elected to fix a term to its duration; or a second appointment might have been made, which would necessarily have terminated the first. Nor will we deny that such fact, or facts, if they existed, might be shown by oral proof. In either of the categories supposed, the sureties on a first bond would not be liable for a default under a second appointment.—*Rapier v. Louisiana Eq. Life Ins. Co.*, 57 Ala. 100; *Kitson v. Julian*, 4 Ellis & Bl. 854; *Hassell v. Long*, 2 M. & S. 363; *N. W. Railway Co. v. Whinray*, 10 Exch. 77; *Holland v. Church-warden*, 9 Welsby, H. & G. 430; *Brewer v. King*, 63 Ala. 511; *So. Car. Soc. v. Johnson*, 10 Amer. Dec. 644; *Com. v. Fairfax*, 4 Hen. & Munf. 208.

The Circuit Court should have ruled, that there was no evidence before the jury tending to show that the liability of Priester and his sureties on their bond ceased before his appointment was revoked, October 11th, 1879.

In *Sweeney v. Bixler*, 69 Ala. 539, the question arose, whether Bixler, who had received a mortgage from one Smith, was a purchaser, in that sense which would override a latent equity asserted by Sweeney. Bixler's claim was past-due, and Smith gave him his note for it, due at one day, which we held to be no extension of the time of payment. On the same day, Smith executed a mortgage to Bixler, conveying to him the property in controversy, as security for the payment of the note. Bixler was bound by the mortgage not to enforce it, if the Smith note was paid by a named day, some four months afterwards. Bixler, at this time, had no knowledge of Sweeney's equity. If the postponed day of foreclosure provided for in the mortgage had the effect of postponing the maturity and collectibility of the debt, then there was a new, contemporaneous consideration, which would constitute Bixler a purchaser as against Sweeney. We said: "The extension of

time, within which the mortgage might be foreclosed, was no suspension of the right to collect the debt." We held that Bixler was not a purchaser, and gave effect to Sweeney's equity.

In Brandt on Suretyship, § 320, it is said: "It has been repeatedly held, that the mere fact that the creditor takes from the principal a mortgage, or trust-deed of property, as collateral security for the debt for which the surety is liable, which matures after the maturity of such debt, does not, of itself, in the absence of an agreement to that effect, extend the time, or discharge the surety." In support of this view the authorities are overwhelming.—*U. S. v. Hodge*, 6 How. 379; *Pendexter v. 'Vernon*, 9 Humph. 84; *Burke v. Cruger*, 8 Texas, 66; *Bank of Penn. v. Potius*, 10 Watts, 148; *Morgan v. Martien*, 32 Mo. 438; *Twopenny v. Young*, 3 Barn. & Cress. 208; *Thurston v. James*, 6 R. I. 103; *Scanland v. Settle*, Meigs, 169.

There is a single Tennessee decision—*Lea v. Dozier*, 10 Humph. 447—which holds the contrary doctrine. That court did not, however, note the fact, that it was overruling *Pendexter v. Vernon*, in the volume immediately preceding.

The authorities are uniform, that any extension of the debt of the principal—any disabling of the creditor's right to sue, no matter for how short a time—granted on a valuable consideration, and without the assent of the surety, discharges the latter.—*Inge v. Branch Bank of Mobile*, 8 Por. 108; *Carpenter v. Devon*, 6 Ala. 718; *Haden v. Brown*, 18 Ala. 641; *Cox v. M. & G. R. R. Co.*, 37 Ala. 320; *Mobile Life Ins. Co. v. Randall*, 71 Ala. 220; *Boultbie v. Stubbs*, 18 Ves. 20; *Ducker v. Rapp*, 67 N. Y. 464; *Chase v. Brooks*, 5 Cushing, 43; *Carkin v. Savory*, 14 Gray, 528; *Veazie v. Carr*, 5 Allen, 14; *Smarr v. Schnitter*, 38 Mo. 478; *Headlee v. Jones*, 43 Mo. 235. This case does not fall within the principle, as there was no agreement binding the creditor not to institute suit for the recovery of Priester's indebtedness.

It was the duty of the Circuit Court to construe Priester's conveyance of the personal property, and his mortgage of the homestead; and he should have told the jury, that neither of them tended, in the least, to absolve the sureties from liability on the bond, further than they diminished the default.

We need not apply these principles to the various rulings excepted to. We have detected no error in the rulings on testimony.

Reversed and remanded.