# COURT OF ERRORS AND APPEALS,

## JANUARY TERM,

## 1885.

———•———

J. ALEXANDER FULTON, defendant below, appellant, *v.* MOSES
HARRINGTON and FRANCIS M. DUNN, complainants below,
respondents.

*Equity—Subrogation—Attorney's Lien.*

The lands of A were sold by the sheriff and the proceeds applied in part to the pay-
ment of a judgment against him in which he was surety for B.

The lands of B were afterwards sold and the proceeds applied to judgments in which
he was surety for A.

The amount thus paid by B as surety for A was greater than the amount paid by A
for B.

A is not entitled to subrogation in the judgment thus paid as surety for B without first
paying the whole amount which B paid for him; and A's assignee can take no
greater interest than he himself had.

An attorney losses his lien upon a fund by taking an assignment of the fund itself.

An attorney has no lien upon a fund which he was not instrumental in creating, and
which never came to his hands.

(*January 7, 1885.*)

APPEAL from Court of Chancery, Kent.

Heard before Wootten, Houston and Whitely, J.

Statement of facts in opinion of court.

*J. Alexander Fulton,* for appellant:

Subrogation, or marshaling of assets, is a purely equitable
relief, wholly discretionary, and the court will never exercise it to
the injury of third parties.

*Sheldon on Subrogation,* §§ 1, 4; *Kendall Exparte,* 17 Ves.,

514; *Gring's Appeal*, 89 Pa., 336; *Armstrong's Appeal*, 5 W. & S., 352; *Wallace's Estate*, 59 Pa., 401; *Wagner v. Elliott*, 95 Pa., 487; *Appeal of Mifflin Co. Bank*, 98 Pa., 150; *McGinnis' Appeal*, 16 Pa., 445.

Creditors have no lien on their debtors' choses in action.

*Dundas v. Dutens*, 1 Ves., 196.

Even sureties are only entitled to indemnity.

*Succession to Dinkgrave*, 31 La. An., 703; *Jordan v. Adams*, 2 Eng. (Ark.) 348.

The equities of Harrington must be wrought out through Atkinson.

*Sheldon*, § 1; *Lloyd v. Galbraith*, 32 Pa., 103; *Miller v. Atkinson*, State Sentinel, Dec. 7, 1878.

As assignee of Todd, who was assignee of Stout, Fulton stands exactly where Stout would now stand if he had not been paid.

*Cottrell's Appeal*, 23 Pa., 294; *Harrisburg Bank v. German*, 3 Pa., 300; *Huston's Appeal*, 69 Pa., 485; *Benedict v. Benedict*, 15 N. J. Eq., 151; *McMillan v. Gordon & Stoddard*, 4 Ala., 716; *Carr v. Waugh*, 28 Ill., 418; *Hardcastle v. Commercial Bank*, 1 Har., 374.

The equities being equal, the legal right will prevail.

The equities being equal, the court remains neutral.

*Adams' Equity*, 159*; *Fonb. Eq.*, 321, 350, 351; *Revised Code*, 360, § 3; *Coates' Appeal*, 7 W. & S., 99; *Knouf's Appeal*, 91 Pa., 78.

The appellant, in addition to his right as assignee of Stout and Todd, had a lien upon the fund as attorney for Atkinson in his suit with Miller, by which it was saved to Atkinson's estate.

This was, First, *Legal*.

*Warfield v. Campbell*, 38 Ala., 527; *Read v. Dupper*, 6 T. R., 361; *Randle v. Fuller*, 6 T. R., 457; *Barnes v. Taylor*, 30 N. J., Eq., 467; *Bower v. Kent*, 1 Cow., 172; *Ten Breck v. DeWitt*, 10 Wend., 617; *McGregor v. Comstock*, 28 N. Y., 237; *Perry v. Chester*, 53 N. Y., 240; *Hunt v. McClanahan*, 1 Heisk., 503; *Pleasants v. Kortrecht*, 5 Heisk., 694.

Secondly, *Equitable*.

*Diehl v. Friester*, 37 Ohio St., 473; *Patton v. Wilson*, 34 Pa.,

299; *Cowdrey v. Galveston*, 93 U. S., 352; *Trustees v. Greenough*, 105 U. S., 527.

*Edward Ridgely* and *James L. Wolcott*, for respondents:

Sheriff Dunn was right in passing the Stout judgment in the application of the proceeds of the sale of Atkinson's land, and will be protected in so doing by the Court of Chancery, because—though the said judgment had been paid to the plaintiff therein out of the proceeds of Todd's lands, yet as Atkinson was surety for Todd in a greater amount, and out of the proceeds of his lands did pay for Todd a greater amount than Todd paid for him—said Stout judgment was in fact, and in equity and good conscience, paid and satisfied.

By performing the contract of suretyship the principal obligation is discharged as respects the creditor, but is kept alive only between the creditor, the debtor and the surety for the purpose of enforcing the rights of the surety. Subrogation is a mode which equity adopts to compel the ultimate discharge of a debt by him who in good conscience ought to pay it, and to relieve him whom none but the creditor could ask to pay.

*Miller v. Todd and Atkinson*, decided by the Chancellor in 1878; *Sheldon on Subrogation*, §§1, 4, 11 and 13, 17 Ves. 514.

Subrogation is purely an equitable result dependent upon the facts of each case, and is independent of any contractual relation.

*Sheldon on Subrogation*, §§1, 2, 3, 4; *Huston's Appeal*, 69 Pa. State Reports, 485; *Neff v. Miller*, 8 Barr, 347; *Eaton v. Hasty*, 6 Brown, (Nebraska), 419; *Miller v. Todd and Atkinson*, Chancellor's Opinion.

The only case to be found conflicting with this principle is the case of *The Harrisburg Bank v. German*, 3 Barr, 303, which was expressly overruled in the case of *Huston's Appeal*, 69 Pa. State Reports, 485.

Fulton claims under an assignment from Todd, and whatever equity he could have under such assignment must be worked out through Todd; and Todd having no equity as against Atkinson could confer none upon Fulton by any assignment.

*Miller v. Todd and Atkinson*, Chancellor's Opinion; *Neff v.*

*Miller*, 8 Barr, 347; *Huston's Appeal*, 69 Pa. State Reports, 685; *Loyd v. Galbraith*, 8 Casey, 103; *Gearhart v. Jordan*, 1 Jones, 325.

Fulton is in nowise a creditor of Atkinson, but is seeking to divert the funds of Atkinson from the payment of his (Atkinson's) lien creditors to the payment of a debt owing to him from Todd.

As the right of subrogation rests upon principles of pure equity, it will not be allowed to a surety who is himself indebted to his principal, against whom he asks to be subrogated *without his first satisfying such debt.*

*Sheldon on Subrogation*, §§ 107, 112; *Coates' Appeal*, 7 Watts & Sergeant, 99; *Barney v. Grover*, 28 Vermont, 391.

When the lands of a surety have been taken for the debt of the principal, though the subsequent judgment creditors of the surety, who have thus lost the benefit of their lien upon his lands, have an equity to be subrogated to the lien of the judgment against the principal to the extent to which they have been deprived of the proceeds of the surety's lands by reason of the prior judgment against principal and surety, yet this equity depends entirely upon the rights of the surety against the principal and is *limited to the balance of general accounts between the principal and the surety.*

*Sheldon on Subrogation*, § 107; *Erb's Appeal*, 2 Penrose & Watts, Penn., 296; *Eaton v. Hasty*, 6 Brown (Nebraska), 425; *Neff v. Miller*, 8 Barr., 347.

Under the well settled principles of subrogation, Todd would have been entitled to be substituted to the rights of the plaintiff in the Stout judgment, had it not been for the superior and countervailing equities of Atkinson, which arose out of the fact that Atkinson, as surety for Todd, paid about $800 more for Todd than Todd paid for him, and to this extent the fund of Atkinson, which ought to have been available for the payment of Atkinson's lien debts, was diminished.

*Miller v. Todd and Atkinson*, Chancellor's Opinion.

Subrogation is purely an equitable result which cannot be assigned or waived at the pleasure of the surety. It is inherent in the relations between principal and surety and all who are related in interest to the surety. It is a principle which follows the thing or relationship in which it inheres. It cannot be separated or

severed from it. It is not a mere personal right, but rests entirely in equity. But it will never be granted when injustice will thereby be done to other persons.

*Sheldon on Subrogation*, §1, last clause; *Eaton v. Hasty*, 6 Brown (Nebraska), 425 ; *Mosier's Appeal*, 56 Pa., 76 ; *Loyd v. Galbraith*, 8 Casey (32 Pa.), 103 ; *McGinnis' Appeal*, 16 Pa., 445 ; *Keely et. al. v. Cassidy*, 93 Pa., 318 ; *Geing's Appeal*, 89 Pa., 401, cited on the other side.

It would be gross injustice to Harrington, a lien creditor of Atkinson, to allow the fund of Atkinson to be appropriated to the payment of a debt due from Todd to Fulton, who is only a creditor of Todd and not of Atkinson, especially after more of Atkinson's fund had been applied to Todd's debts than Todd's had been applied to Atkinson's.

The surety is a creditor of the principal from the time of his signing the obligation by which he is bound, just as he is liable to the creditor from that time, though his equity to be subrogated to the securities held by the creditor does not become complete until his payment of the debt.

*Sheldon on Subrogation*, § 102 ; *Appleton et. al. v. Bascom et. al.*, 3 Metcalf, 169 ; *Barney v. Grover*, 28 Vermont, 391 ; *Chancellor's Opinion, Miller v. Todd and Atkinson*.

The Act of Assembly authorizing the assignment to a surety of the debt of a principal paid by the surety, expressly provide that no defendant shall be debarred of any remedy against the plaintiff, or his representatives or assigns, by any legal or equitable course of proceeding whatever.

*Revised Code*, Chap. 66, § 3, 360.

This statute is merely declaratory of the well settled principles of equity jurisprudence which existed long prior to its passage, and was enacted by the Legislature to avoid the circuity and expense of suits in Chancery.

WHITELY, J.:

Henry Todd became the surety for William A. Atkinson in a judgment in the Superior Court for Kent County at the suit of E. J. Stout for real debt of $1,230.00. Interest from September 27, 1866. Entered September 27, 1866.

Atkinson became surety for Todd in four several judgments in said court.

One at suit of Farmers' Bank, real debt $1,000.00. Interest from April 1, 1869. Entered November 7, 1871. And three others at the suit of the Citizens' Building and Loan Association of Dover, one for real debt $500.00. Interest from April 12, 1873. Entered November 3, 1873. Another for real debt $1,100.00. Interest from October 11, 1873. Entered November 3, 1873. And the other for real debt $400.00. Interest from December 3, 1873. Entered December 22, 1873.

Todd's lands were sold by Peter L. Cooper, Esq., then sheriff, on the 14th and 21st days of March, 1876. And at the April term following of said Superior Court he applied, out of the proceeds of said sale, $1,370.24 to the judgment of Stout.

Atkinson's lands were sold by Francis M. Dunn, then sheriff, on April 12, 1881, and at the following term of said court, he applied the sum of $2,555.27 to the said four judgments at the suit of the Farmers' Bank and the Citizen's Building and Loan Association of Dover.

The amount paid by or out of the lands of Atkinson, as surety for Todd, exceeded by $1,185.03, the amount paid by or out of the lands of Todd, as surety for Atkinson. But by the allowance of interest on the amount of the Stout judgment, from the confirmation of the sale of Todd's lands to the time of the confirmation of the sale of Atkinson's lands, a period of five years, this excess is reduced to the sum of $773.96.

In 1869 J. Alexander Fulton became surety for Todd to the Farmers' Bank for $3,000.00, which sum, he as such surety, paid to the bank. He was also surety for Todd to other persons. He has never been reimbursed in whole or in part, for the amount paid the bank.

On the 16th day of March, 1877, Todd executed and delivered the following paper to Fulton and Atkinson :

"In Chancery, LEVI H. MILLER v. EMANUEL J. STOUT, WILSON L. CANNON, HENRY TODD and WILLIAM A. ATKINSON.

"WHEREAS I, Henry Todd, one of the defendants above

named, am only surety for William A. Atkinson in the judgment mentioned in the bill of complaint of Levi H. Miller, filed in this cause in favor of Emanuel J. Stout, being No. 173, April Term, 1866, J. D., 11, p. 495, for $1,230.00 with interest, and upon payment thereof out of the proceeds of sale of my real estate, would be entitled to be subrogated to the rights of the plaintiff therein, as against William A. Atkinson, the principal. And whereas the said William A. Atkinson and J. Alexander Fulton are my sureties in various matters, especially both of them to The Farmers' Bank, and the said Fulton also to Susan A. Raymond, now deceased, in sums much larger than the said judgment. And whereas, I am desirous to secure my said sureties, so far as I may be able and protect them from loss. Now know all men by these presents, that I, Henry Todd, of Dover, Delaware, in consideration of the premises, do hereby assign, transfer and set over to the said William A. Atkinson and J. Alexander Fulton, their executors, administrators and assigns, in equal proportions, the said judgment of Emanuel J. Stout against me and the said Atkinson, and all my interest therein and all remedies thereon, and especially the right to be subrogated to the rights of the plaintiff upon its being paid out of the proceeds of the sale of my real estate, subject however in all respects to any order or decree the Chancellor may make in the case above entitled.

"Witness my hand and seal this 16th day of March, A. D. 1877.
*Attest:*                           H. TODD. [SEAL.]"

On 23d of March, 1880, Emanuel J. Stout assigned the said judgment to the said Todd, and on the same day Todd assigned one-half thereof to the said Fulton.

Moses Harrington, one of the respondents, before the sale of Atkinson's lands, was a lien creditor of Atkinson, viz.:

1. A judgment of Farmers' Bank against Todd and Atkinson, the latter as surety for Todd. Real debt, $1,000. Interest from April 1, 1869. Entered November 7, 1871. Assigned to Harrington, March 16, 1880, by the bank.

2. In a mortgage for real debt of $775.50, with interest from September 7, 1876, assigned to him by Farmers' Bank.

3. And in a judgment, wherein he is plaintiff. Real debt,

$2,376.23. Interest from April 12, 1876. Entered May 16, 1876.

Francis M. Dunn, sheriff, in the application of the proceeds of the sale of Atkinson's lands, passed the said Stout judgment, and applied such proceeds to the liens against Atkinson, in the order of their priority; in such application the sum of $345.52 was applied to the last named judgment of Harrington in part payment thereof.

Fulton then brought suit in said Superior Court on the official recognizance of Dunn, for an alleged misapplication of the proceeds of said sale—in not paying him one-half of the Stout judgment— to restrain which suit the bill in this case was filed. The Chancellor decreed that the injunction should be perpetual. From which decree Fulton appealed to this court.

Todd and Atkinson were both insolvent several years before commencement of this suit.

We do not see how Fulton, under either of the assignments, could have any redress *at law*, or had thereby any status, by virtue of which he could recover against Sheriff Dunn, when Atkinson's lands were sold, and the money arising thereby was not applied by the sheriff to the payment of the Stout judgment.

The judgment was entered jointly against Atkinson and Todd. At law they were both considered as principals, and Sheriff Cooper did what the law compelled him to do when he paid the judgment out of the sale of Todd's lands. Again, when Todd's lands were sold by the sheriff, and confirmation of the sale by the court, the sale, *ipso facto*, satisfied the judgment, as it was the leading judgment against Todd, and there was in the sheriff's hands more than sufficient to pay it, and if the sheriff had not paid it to Stout, his only remedy and redress would have been by suit upon the sheriff's official recognizance. Upon confirmation of the sale, the lien of the judgment upon any and all of the lands of both Atkinson and Todd was removed. But in addition, the judgment was actually paid by the sheriff to Stout, so then, when Stout undertook in 1880 to assign this judgment to Todd, who then assigned to Fulton, *he had no judgment to assign.* It was gone by payment. It was dead. It was *functus officio.* We therefore do not think that Todd as assignee of Stout, nor Fulton as assignee of

Todd, took any right, legal or equitable, under the assignment or transfer of this Stout judgment.

As regards the assignment by Todd to Fulton and Atkinson, dated March 16, 1877, of the Stout judgment, the appellant does not claim in his answer to the respondents Bill, nor did he in his argument, that it conveyed to them any legal title or rights, such as could be enforced at law.  Nor could he do so.  Todd was defendant in this judgment—a co-obligor with Atkinson in the bond by virtue of which the judgment was entered, and unless he had previously obtained from Stout an assignment, under our act of Assembly, in reference to " Principal and Surety," to himself as surety, he could, by no device, assign or transfer the judgment. But as an equitable assignment of whatever his rights or equities were, as against Atkinson—on account of his being Atkinson's surety, and that Atkinson's debt to Stout was paid out of the proceeds of the sale of his lands, we think it good and valid.  We do not consider it an assignment of the judgment, but an assignment of Todd's rights, priorities and remedies under and on account of it, and transfers to Fulton whatever equitable rights, &c., Todd possessed, and if there were no superior and countervailing equities upon the part of Atkinson against Todd, the appellant, as assignee, could recover in a Court of Equity against Atkinson, whatever Todd himself could recover.

Atkinson was surety for Todd in four judgments for an amount greater than the amount of the Stout judgment, and he had been compelled to pay this money to Todd's creditors.  · He was therefore entitled to be reimbursed if Todd could do it.

" In equity, as soon as a surety pays the debt of his principal, he is considered as subrogated to all the rights, remedies and securities of the creditor, as substituted in the place of the creditor, and entitled to enforce all his liens, priorties and means of payment as against the principal."

As we have said, if Todd had paid the Stout judgment, he could, under our Act of Assembly, have taken an assignment of it from Stout, and if the requirements of the act had been strictly followed, he would have been substituted in place of Stout as plaintiff, and would have held the judgment as a lien against Atkinson's land as firmly and effectually as Stout did.  The lien

against Atkinson would thus have been preserved, and when Atkinson's lands were sold by Sheriff Dunn, this judgment would have to have been paid in its order. Now what the law does by virtue of this Act of Assembly, equity does by subrogation, and therefore if there was nothing more in this case than that Todd was security for Atkinson in this Stout judgment—no countervailing equities upon the part of Atkinson—a Court of Equity would have given Todd the benefit of the lien of that judgment upon Atkinson's lands in preference to subsequent judgment or mortgage creditors of Atkinson ; this is what is called " subrogation."

How then stand the equities between Todd and Atkinson? This is the gist of this case. As has been seen, Todd was the surety for Atkinson in the Stout judgment, and when his lands were sold by Sheriff Cooper, the sheriff paid out of the proceeds of sale $1,370.24 to Stout.

Atkinson was surety for Todd in four small judgments ; and when his lands were sold by Sheriff Dunn, the sheriff paid out of the proceeds of sale $2,555.27 to the plaintiffs in these judgments. An excess in favor of Atkinson of $1,184.03, but this amount was reduced to $773.96 by allowing Todd interest on the sum paid from the sale of his lands, from the date of the sale of his lands to the sale of Atkinson's lands, a period of five years.

Atkinson had thus paid for Todd $773.96 more than Todd had paid for him.

Does it need the citation of authorities to convince us that Todd cannot call, nor can any assignee of his call, upon Atkinson to repay him the Stout judgment, until he (Todd) has paid Atkinson the amount of the four judgments in which he was his, Todd's, surety ?

Is it not " every day equity " that a man must pay his own debt before he can collect from his creditor a debt due him ? As was said by the counsel for the respondents in their argument, " does not the equity between principal and surety depend entirely upon the rights of the surety against the principal, and is limited to the balance of general accounts between them ? " Would any other rule be equity ?

Judge Bell of the Supreme Court of Pennsylvania in the case of *Neff v. Miller*, 8 Barr, 347, a case very similar to the one

before us, in delivering the opinion of the court, said, " Here is a surety whose money has been applied in the payment of the debt of his principal to the exclusion of his own proper creditors. That he would be entitled to come in by way of substitution upon the estate of his principal is every day equity. And did the case stop here, the Messrs. Neff would be entitled to be subrogated to the original rights of the holder of the Givin judgment to the amount which would have been properly applicable in the payment of the Smith judgment, had not Givin's judgment interfered. But Miller claims that Isaac Neff, (surety for Miller) was indebted to him in a certain amount which being deducted from the amount of Givin's judgment, leaves due to Neff but the sum of $1,648.84. If so, this limits to that amount, at furthest, the equitable right of John and Jacob Neff, (the sureties of Isaac Neff, and who had paid for him the Smith judgment) as holders of the Smith judgment. For, as we have seen, this equity is only co-extensive with the sum in which Miller stands indebted to Isaac Neff in transactions and proceedings which have had place between them. If at the time of the appropriation of Neff's estate to the payment of the Givin judgment, Neff was indebted to Miller in the full amount, there would be nothing upon which the right of subrogation would attach. So the operation of this right is curtailed in proportion as Neff stands indebted to Miller, for it is only beyond this that he has suffered injury by the neglect to satisfy the joint judgment.

And in the case of *Coate's Appeal*, 7 Watts and Sergeant, p. 99, in the same court, Kennedy, J., in delivering the opinion of the court, said : " But the right of subrogation rests on principles of pure equity, and ought never to be granted to a party where it appears that he is indebted, on any account, in an equal, less or greater amount to the person against whom the judgment exists to which he asks to be substituted, as plaintiff, without first satisfying such indebtedness."

This is so well settled as an equitable principle, that the further citation of authorities would appear unnecessary. We refer however, to *Huston's Appeal*, 69 Penna., 485 ; *Loyd v. Galbraith*, 8 Casey, 103 ; *McGinnis' Appeal*, 16 Penna, 445 ; *Keely v. Cassidy*, 93 Penna., 318 ; *Patterson v. Pope*, 5 Dana., 241 ; *Erb's Appeal*,

2 Penrose & Watts, 290; *Goswiler's Estate*, 3 Penrose & Watts, 200; *Kyner v. Kyner*, 6 Watts, 221-227; *Bk. of Penna. v. Potius*, 10 Watts, 148; *Union Bk. of Md. v. Edwards,* 1 Gill. & John., 346, 365; *Hardcastle v. Com. Bank*, 1 Harr., 374, 378; *note*.

When a part of the proceeds of the sale of Todd's lands—in 1876—was taken to pay Atkinson's debt, Atkinson, as we have seen, was then surety for Todd in a sum greater than that for which Todd was surety for him, to wit, in an excess of $773 96.

And when, in 1881, Atkinson's lands were sold, the judgments against Todd, with Atkinson as surety, were paid out of the proceeds of sale. Such being the case, the appellant has failed to show us what it was that Todd, or he as assignee, could be subrogated to; there was nothing in fact upon which the right of subrogation could attach. For, as Bell, J., said in the case of *Neff v. Miller*, "This equity—the right of subrogation—is only co-extensive with the sum in which Miller (Atkinson in this case), stands indebted to Isaac Neff (Todd, in this case), in transactions and proceedings which have had place between them."

And as the indebtedness is the other way, from Todd to Atkinson, there can be no *subrogation* in favor of Todd in any shape, way or form, but it should be in favor of Atkinson, if there was any thing upon which it could attach.

Another matter. How has Todd been injured? The appellee failed to show this also. In fact it was impossible for him to do so, as the sum Todd paid for Atkinson was less than that which Atkinson paid for him. He who paid the most is the one who was injured, and a Court of Equity will always balance the account. We are thefore of opinion that the appellant took nothing by the assignment of Todd to him of March 16, 1877.

But the appellant claims "that in addition to his right as assignee of Stout and Todd he had a lien upon the fund as attorney for Atkinson in his suit with Miller, by which it was saved to Atkinson's estate." We cannot, however, appreciate the argument upon the behalf of any agent—attorney or other—that he can have a *lien* upon a fund with which he had no part in its creation, collection or preservation, and which was never in his possession. The appellant had no relation to, or connection with the making and executing of the bonds given by Atkinson and Todd to their

several creditors, or the entry of judgments thereon, nor to the collection thereof by execution process. He was not the attorney of Atkinson in any one of the cases; the fund arising from the sheriff's sale of Atkinson's lands was never in his hands, nor could it have been legally. If he could have a lien upon a fund arising in the manner stated, why could not any merchant or mechanic have a lien also upon it for goods sold or work done?

But if the appellant had, by any possibility, a lien, he waived it, by taking the assignments of Stout and Todd. The undisputed rule is, that the taking of any distinct and independent security waives the lien, and it is no matter whether the security is available or not. Good or bad, *it opens his hands,* and lets the goods or fund held, *go.*

Let a decree be drawn affirming the decision of the Chancellor.