PETER N. DODD, administrator, d. b. n. of BARKLEY WILSON, deceased,

*vs.*

WILLIAM WILSON.

*Sussex, Mch. T. 1871.*

The remedies given to sureties under chapter LXV of the Revised Code are merely cumulative.

Where three of five joint obligors, being sureties, have settled with the creditor by giving a new bond which was afterwards paid by one of them, one of the others being insolvent and the third having died, the obligor in the second bond who had paid the debt was entitled to maintain a bill in equity to recover from the estate of the principal debtor in the original bond, who had died, the sum so paid.

Inasmuch as one of three obligors, in a joint bond to settle a debt for which they had become bound as sureties, could compel contribution from the other two, and the three then would have a remedy against the principal debtor, a bill by the one who has paid the debt will be maintained directly against the principal debtor, upon the ground of preventing a multiplicity of suits.

A court of equity, looking to the substance of the transaction, will treat the second bond as if the principal debtor had joined in it, with respect to the equitable remedies of the sureties.

It is a recognized exception to the general rule, requiring all interested in the subject-matter to be joined in the suit, that one of several sureties paying the debt may proceed against the principal without joining his co-sureties.

BILL IN EQUITY.—This bill was filed to recover, from the principal in a judgment bond, money paid by one of several sureties, under these circumstances:— William Wilson gave his judgment bond for $670, dated March 2d, 1852, to the Farmers Bank at Georgetown, with Barkley Wilson, Joshua Marvel, James Wilson and Silas Reynolds as sureties. Judgment was entered on this bond and execution issued. Three of the sureties, Barkley Wilson, Joshua Marvel, and Silas Reynolds in order to be relieved from the execution, gave to the Bank their judgment bond for the amount then due ($800) which the bank accepted in satisfaction of the original judgment. Judgment was then entered on the second bond. After this Marvel died and execution was issued against Barkley Wilson and Reynolds as surviving obligors in the second bond. Pending this execution, Barkley Wilson died. Reynolds being insolvent and Marvel dead, the Administratrix of Barkley Wilson paid, under the execution, the whole debt ($1046.46.) She now files this bill to recover that amount with interest, from Wm. Wilson, the principal in the original bond.

To this bill a demurrer was filed.

The chief ground of the demurrer was, that the payment made by Barkley Wilson's administratrix was one made to the judgment on the second bond, to which William Wilson was no party ; that her remedy therefore is against the co-obligors on the second bond for contribution ; that the remedy against William Wilson can

be taken only by the three sureties together whose joint obligation it was that satisfied the original debt in which William Wilson was the principal.*

The demurrer was argued March 17, 1871.

*Layton,* for the complainant.

This is a bill for discovery and the material facts are admitted by the demurrer. The equity to relief follows the discovery. *1 Sto. Eq. Jur.* 64. *k.* Our case rests upon the ground that William Wilson being the principal, for whose debt, in fact, the payment was made and who is ultimately liable, equity will, to prevent a circuity of remedy, afford relief against him. *1 Madd. Ch. Pr.* 236; 1 *Vern.* 190; *Mitf. Eq. Pl.* 1 20; 2 *Bro. C. C.* 582.

The demurrer admits facts alleged, viz:—the first judgment,—that the defendant alone was principal,—that he has not paid it,—that the second judgment was given in satisfaction of the first judgment,—that he has paid nothing to that,—that B. Wilson's administratrix paid the money,—also what is alleged as to other securities.

We have no remedy at law against William Wilson:— none on the first judgment, because it is satisfied by the second,—none on the second because he was no party to it. To proceed against the co-sureties on the second judgment would only result in their proceeding ultimately against William Wilson, the principal.

It is not necessary to make the other securities parties, because they have no interest. They have paid nothing,—have no claim. True, they are liable to contribute if complainant choose to hold them to it; but he is not bound to call on them; may proceed directly upon the principal. To what purpose make them parties, if

---

*For a fuller statement of the facts of this case, if desired, see the report of the hearing on the merits. *post.*

they have no claim, and if no decree sought against them? *Rev. Code Ch.* 65, *p.* 186-7 *3rd Sec.* reserves the precise equitable relief we now seek.

*Wright,* for the demurrants.

We hold that neither Barkley nor his representatives have paid any debt of William Wilson. His debt was paid by the bond given by the three sureties. The remedy is for those three sureties to take an assignment of the first judgment under the Statute, or that the three sureties proceed at law against William Wilson for money paid, or in equity. The administratrix having paid the second judgment can take an assignment of the second judgment or proceed in equity for contribution against the co-sureties on that bond.

First—Did the second judgment pay the first ?

This appears on the face of the bill. It alleges the effect of the second judgment to be in satisfaction of the first. The Bank so accepted it and afterwards proceeded solely on the second judgment and finally the Bank collects the debt under the second judgment.

At law, though one security or contract is not necessarily an extinguishment of another, yet, if so accepted, it operates as such.

Second—Has then Barkley Wilson's representative a remedy against William Wilson ? When the second judgment was given, the law implied a promise, by William Wilson to pay the three sureties who gave it upon consideration of their giving it. A contract was then fixed and settled. No other contract or liability could arise out of the transaction. The law does not allow several promises to arise out of the same consideration.

Again, by their giving the second judgment certain rights vested in them : First, to take an assignment of

the first judgment. Second, to proceed for money paid. No subsequent act on the part of Barkley Wilson could divest the rights of those two sureties. Then the payment of the second judgment was not for the benefit of William Wilson, he not being bound under it, and therefore against him no promise could be implied nor any equity arise. The mere receiving of a benefit is not a ground of liability for a payment. The payment was *for the sureties,—not for William Wilson.* The benefit to William Wilson was by the giving of the second judgment by the sureties, to whom alone he became liable. But the second judgment itself was not his debt but that of the sureties. Its payment was for their benefit and only against them. could it give birth to any liability.

The administratrix, by the payment, is subrogated to the Bank's remedy, not on the first but on the second judgment ; for it is only to the right of the creditor *on the security paid* that the surety succeeds.

The first judgment was a debt of principal and surety ;—the second was the debt of three co-debtors,—all principals. The nature and character of the debts is distinct.

Their very first proof, *i. e.* the second judgment, which it is that they have paid, destroys their case.

The equities are not between William Wilson and Barkley's administrators. They are between William Wilson and the three sureties. For the equities arise only out of the payment, and the second judgment was the payment.

As to defect of parties :—

If each original surety had contributed his part he might have sued William Wilson alone. But they paid it, three of them, by joint security. Hence, the demand or equity growing out of it must be joint. *Osborne et al.*

Opinion.

*vs. Harper,* 5 *East* 225 ; *Tom vs. Goodrich,* 2 *Johns.* 214 ; *Chitty on Cont.* 597, (*n*) ; 3 *N. H.* 366 ; 3 *Greenl.* 107 ; 5 *Esp.* 197 ; 8 *Cow.* 168. It might be held that Barkley Wilson, being surety in the first judgment,.might recover of, William Wilson one-third of the original judgment as one of the three obligors in the second judgment, bond. *But the prayer does not cover this—* there is not even a prayer for general relief, for it would be contradictory to the special relief sought and is not consistent with the case of the bill. . The prayer for special relief should be in the alternative.

THE CHANCELLOR :—

If we consider only the remedies given by our statute* to sureties *i. e.* the remedy by taking an assignment of the evidences of the debt,which in this case are the judgments paid, then it may be true, as assumed by the demurrer that only the three obligors in the second bond could, as the sureties who had satisfied the original jndgment, take an assignment of that judgment and that Barkley Wilson's administratrix on paying the judgment on the second bond could take under the statute only an assignment of the second judgment. But these statutory remedies are only cumulative. The statute expressly reserves all pre-existing remedies, legal or equitable ; and I feel no doubt that independently of the Statute, equity, under the circumstances of this case will give direct relief against William Wilson, the principal debtor in the original bond and that such is the proper course of proceeding.

This would result from the very positions assumed in support of the demurrer—viz,—that Barkley Wilson's administratrix is entitled to contribution from the co-obligors in the second bond ; and that then the three co-obligors in that bond, as sureties for the original debt,

*Rev. Code Ch. LXV,

15—DEL. CH. IV.

would have their remedy against William Wilson, either by assignment of the original judgment, or by suit at law for money paid, or, it may be added, by a bill in equity. Now assuming such to be the direct remedies of the sureties then equity will relieve the surety, who has paid his debt, by a bill against William Wilson as the party ultimately bound to refund. This is upon the principle of preventing a multiplicity of suits—a principle of very familiar and general application which was not controverted in the argument and against which, in its application to such a case as the argument for the demurrer assumes this to be, I can find no reason or authority.

But the equity of the bill seems sustainable upon broader grounds. A court of equity will look to the substance and purpose of a transaction without respect to the legal forms under which it is clothed. This is especially true in the case of suretyship, with respect to which, whatever may be the form of the instrument or the obligations of the parties, on the face of the instrument or in a court of law, a court of equity will always inquire into the real nature and objects of the transaction and afford relief accordingly. In the present case, this Court, looking to the substance of the transaction, will consider the second bond as a security, given for William Wilson's debt, by the three sureties, and will treat the payment by Barkley Wilson's administratrix as the payment of William Wilson's debt by one of those sureties. No question would have been made of this had William Wilson been joined in the second bond. Now while it is true that William Wilson's being omitted in the second bond precludes the statutory remedy as against him by an assignment of the judgment—it makes no difference as to any equitable remedy. A court of equity will consider, according to the fact, that the debt secured by this second bond was William Wilson's debt, treating him

as the principal and the obligors as sureties with the same effect as to all equitable remedies as if he had joined in the second bond. Thus there can be no doubt that the sureties might have filed a bill before the debt was settled to compel William Wilson to pay it and exonerate them, though his name was not on the security given. It is not questioned that if the three sureties had jointly paid this bond they could jointly have proceeded in equity against Wilson to reimburse them. If so then one surety paying the debt alone ought to have the same remedy.

The fallacy of the defendant's argument lies in considering that William Wilson's liability as debtor was limited to the first bond. That was true so far as concerned the Bank. To the Bank his liability ceased upon the satisfaction of the first boud.

But the second bond being in fact given to secure a debt originally Wilson's, equity will still treat him under that bond as the principal so far as the sureties are concerned and for all purposes of equitable relief in their favor. This would be true had the first bond had not been given at all and had the second bond been the original transaction. The principle which governs the case is, that so far as the sureties are concerned and for all general equitable remedies, the Court will look to the substance of the transaction and the real relations of the parties and will therefore treat Wilson as though joined in the second bond, it being in fact given for his debts. The only difference resulting from his omission as a party to it was the loss of the legal remedies depending on the face of the instrument. That is, the bank would have no remedy against Wilson and the sureties could not take an assignment of his bond under the Statute so as to reach Wilson. But their general equitable remedies were not lost by his not being joined.

It results then that either of the three sureties paying the debt would have his remedy, by a bill in equity,

directly against William Wilson as the principal without being put first to call on his co-sureties for contribution. More than this, the surety paying the debt would not be permitted to proceed solely against the co-sureties. In a bill by a surety for contribution, the principal must be made a party. *Rainey vs. Yarborough,* 2 *Ired. Eq.* 249; *Adams on Eq.* [269] *note.* In such a case the Court would so frame and execute its decree as to enforce payment in the first instance by the principal, or to exhaust the remedy against him before enforcing contribution by the sureties.

Another ground of demurrer is that the co-obligors with Barkley Wilson, being his co-sureties, are not made parties. But this is unnecesary. It is a recognized exception to the general rule, requiring all interested in the subject-matter to be joined in the suit, that one of several sureties paying the debt, may proceed against the principal without joining his co-sureties. In such case they have no claim to be enforced entitling them to be joined as co-plaintiffs. No decree is sought against them requiring them to answer as co-defendants, nor are they under any responsibility over to the principal, requiring them to be joined for the protection of interests to be affected by a decree against him. *Sto. Eq. Pl. Sec.* 169 and cases cited; Lord Hardwicke in *Madox vs. Jackson,* 3 *Atk.* 406; Lord Eldon in *Cockburn vs. Thompson,* 16 *Ves.* 326.

In the cases cited in support the demurrer on this ground from 5 *East* 225, and 2 *John.* 214, the sureties had jointly paid the debt and their remedy against the principal was therefore held to be joint. In this case the debt was paid only by Barkley Wilson's administratrix. The defendant erred in assuming that the second bond was of itself a joint payment of the debt. That bond was only a joint and several security. It operated it is true as a satisfaction of the first bond so far as the Bank was concerned but it was not a payment as between the principal

and sureties. Clearly these three sureties could not on giving the second bond have proceeded against William Wilson for reimbursement in money as if they had paid the debt. They might have proceeded jointly to protect themselves as by taking an assignment of the first bond under the statute or by filing a bill calling on Wilson to exonerate them; but their giving the bond of itself created no joint demand against Wilson for the money. A right to collect the money from him, which is the right now to be enforced, could arise only upon payment of the money and could enure only to such surety or sureties as should finally pay his debt.

The demurrer must be overruled and the defendant ordered to answer or plead.