MATTHEW HAZEL

*vs.*

ZENAS W. SINEX.

Kent, March T. 1886.

*Usurious judgment bond; innocent surety on, protected against enforcement of; exoneration.*

1. B borrowed money from S on a usurious contract, giving his judgment bond therefor with H as surety therein. B, the principal, becoming insolvent, S issued an execution against H, the surety, to enforce payment. *Held,* that S should be forever restrained from collecting the amount of the judgment out of the surety. *Held,* further, that it was not necessary for H, the surety, either before bringing his bill or at the trial, to tender himself ready to pay the sum actually lent, with interest; and that the principal and surety stood upon a different footing in this respect.

2. S, a judgment creditor of B as principal and H as surety, issued an execution against B, and levied on goods of sufficient value to satisfy the judgment, but afterwards stayed the same, and permitted B to sell the goods levied on and apply the proceeds to his own use without the consent of H, the surety. *Held,* that the judgment as to H was satisfied in equity, and that S should be perpetually enjoined from proceeding against H, the surety.

INJUNCTION BILL.—The bill seeks to restrain the collection of a judgment.

The facts are stated in the opinion.

*Beniah Watson* and *Edward Ridgely,* for the complainant:

I. It is clearly settled that an obligation in the hands of an assignee is subject to all the equities which could have prevailed against the original obligee. This principle is too well established to require authorities.

II. A bond executed in blank cannot be filled up

without special authority of the obligors.  *Clendaniel* v. *Hastings*, 5 Harrington, 408.

If a bond intended as security for $500 to one were filled up to another for $1,100, it would be a fraud upon the surety, and a court of equity would discharge him from all liability thereon.  *Hastings* v. *Clendaniel*, 2 Del. Ch. 165 ; affirmed on appeal, 5 Harrington, 408.  So also a bond filled up before it was signed by surety, and diverted from the object for which it was intended without his knowledge, would be a fraud upon the surety, and he would be discharged in equity.  For the surety can well say, "*In hæc fœdera non veni.*"  *Hastings* v. *Clendaniel, supra.*

One who becomes surety for another must ordinarily be presumed to do so upon the belief that the transaction between the principal parties is one occurring in the usual course of business of that description, subjecting him only to the ordinary risks attending it ; and the party to whom he becomes a surety must be presumed to know that such will be his understanding.  Brandt, Sur. p. 492, § 366; *Pidcock* v. *Bishop*, 3 Barn. & C. 605; 1 Story, Eq. § 215.

The concealment of any material facts, which, if known, would prevent the surety from entering into his contract of suretyship, is a fraud upon him ; and a court of equity will relieve him from all liability.

III. The note which Sinex held against Blackiston for $624, which formed a part of the consideration of the bond upon which judgment was entered, was usurious and consequently illegal and void ; and no action could have been maintained upon it for the recovery of the money.  *Cook* v. *Pierce*, 2 Houston, 499 ; *New Port Nat. Bank* v. *Tweed*, 4 Houston, 225.

Where the original loan or contract is usurious all the securities therefor, however remote or often renewed,

are void.  *Cleaden* v.  *Webb,* 4 Houston, 473; *Tate* v. *Wellings,* 3 T. R. 537; *Reed* v. *Smith,* 9 Cow. 647; *Campbell* v. *Sloan,* 62 Pa. 481; *Bridge* v. *Hubbard,* 15 Mass. 96; *Pearson* v. *Bailey,* 23 Ala. 537; *Wales* v. *Webb,* 5 Conn. 154; *Price* v. *Lyons Bank,* 33 N. Y. 55.

Independent of the usurious note which formed part of the consideration of the bond, the bond itself was usurious, as Sinex retained $100 and only paid Blackiston at the time of the assignment $376, when he ought to have paid him $476.  As this entire transaction between Sinex and Blackiston was usurious and void, and unknown to the surety and contrary to his purpose and object when becoming security for Blackiston on the bond, the surety is in equity discharged.  As Sinex was guilty of wrongful and illegal conduct in exacting usurious interest for the money advanced, the loss should more properly fall on him than upon Hazel, who was an innocent surety.  *Hayes* v. *Ward,* 4 Johns. Ch. 123.

IV. The creditor who has effects of the principal in his hands or under his control for the security of the debt is a trustee for all parties concerned; and if such effects are lost through the negligence or want of ordinary diligence of the creditor, the surety is discharged to the extent that he is injured, the same as if the effects had been lost by the positive act of the creditor.  In such case he is bound to be diligent in preserving such effects, to the same extent that any other trustee similarly situated is bound.  Brandt, Sur. 519, 520; Pitm. Sur. 138; Law Lib. 40; *Phares* v. *Barbour,* 49 Ill. 371.

If the principal places an obligation of a third person in the hands of the creditor as collateral security for the debt, the creditor is, without any special agreement to that effect, bound to use diligence to collect the same and to charge all the parties thereto; and if anything is lost on account of his failure to use such diligence, not only

the surety but the principal also is discharged, to the extent that he is injured. Brandt, Sur. 519; *Slevin* v. *Morrow*, 4 Ind. 425; *Cummings* v. *Little*, 45 Me. 183, 187; *New Hampshire Sav. Bank* v. *Colcord*, 15 N. H. 119; *City Bank* v. *Young*, 43 N. H. 465; *Williams* v. *Price*, 1 Sim. & Stu. 582; *Capal* v. *Butler*, 2 Sim. & Stu. 457; *Wolff* v. *Jay*, L. R. 7 Q. B. 756; *Hayes* v. *Ward*, 4 Johns. Ch. 123, 131; *Watriss* v. *Pierce*, 32 N. H. 560; *Phares* v. *Barbour*, 49 Ill. 370, 371; *Rogers* v. *Trustees of Schools*, 46 Ill. 428; *Calloway* v. *Snapp*, 10 Rep. 696; *S. C.* 78 Ky. 561; *Succession of Pratt*, 16 La. Ann. 357; *Renegar* v. *Thompson*, 1 Lea, (Tenn.) 457; *Bond* v. *Ray*, 5 Humph. 492; *Nelson* v. *Munch*, 28 Minn. 314; *Hurd* v. *Spencer*, 40 Vt. 581; *Richards* v. *Commonwealth*, 40 Pa. 146; *Lowndes* v. *Chisolm*, 2 McCord, 464; *Rathbone* v. *Warren*, 10 Johns. 586; *Niblo* v. *Clark*, 3 Wend. 24; *English* v. *Darley*, 2 Bos. & P. 62; *Willis* v. *Davis*, 3 Minn. 21.

Where a creditor without being bound to sue or issue execution on judgment does sue and issue his *fieri facias* and under that *fieri facias* a levy is actually made, the property or effects thus held become answerable for the debt, and the creditor is not at liberty to abandon the hold he has thus acquired; he cannot relinquish the property. And if he does relinquish or abandon the lien, or suffers the property so taken and at his disposal to be squandered or appropriated to other and different purposes, the surety is exonerated. The auditor is not bound to be diligent in obtaining securities for the debt, but, having obtained them, he at once becomes a trustee thereof for all parties concerned. Brandt, Sur. 509, 510, § 378; 1 Story, Eq. 2d ed. 322, § 326; Theobold, Prin. & Sur. *143; *Houston* v. *Hurley*, 2 Del. Ch. 248; *Mayhew* v. *Crickett*, 2 Swanst. 185; *Sherraden* v. *Barker*, 24 Iowa, 28; *Watson* v. *Reed*, 4 Baxt. 49; *Baker* v. *Briggs*,

8 Pick. 121; *Com.* v. *Van Derslice,* 8 Serg. & R. 452; *Lichtenthaler* v. *Thompson,* 13 Serg. & R. 157; *Cooper* v. *Wilcox,* 2 Dev. & B. Eq. 90; *Winston* v. *Yeargin,* 50 Ala. 340; *Bank* v. *Fordyce,* 9 Pa. 276; *Dixon* v. *Ewing,* 3 Hamm. (Ohio) 281; *Morley* v. *Dickinson,* 12 Cal. 561; *Maquoketa* v. *Willey,* 35 Iowa, 323; *Commonwealth* v. *Haas,* 16 Serg. & R. 252; *Ferguson* v. *Turner,* 7 Mo. 497; *Dills* v. *Cecil,* 4 Bush, 579; *Brown* v. *Riggins,* 3 Kelly, 405; *Pain* v. *Packard,* 13 Johns. 174; *Bullitt* v. *Winston,* 1 Munf. 269; *Law* v. *East India Co.* 4 Ves. Jr. 824; *State* v. *Hammond,* 6 Gill & J. 157; *Everly* v. *Rice,* 20 Pa. 297; *Phares* v. *Barbour,* 49 Ill. 370; *Rees* v. *Berrington,* 2 Ves. Jr. 540; *Chichester* v. *Mason,* 7 Leigh, 260; *Harberton* v. *Bennett,* 1 Beatty, Ir. Ch. 386.

Although a mere stay of execution against the principal, by the creditor, will not release the surety, yet a release of the goods of the principal, levied on under the execution, will discharge the surety to the value of the goods released. *Houston* v. *Hurley,* 2 Del. Ch. 248.

By the promise of Sinex to satisfy the judgment against Hazel, prior to the public sale of Blackiston's personal property, Hazel was belied into security and was misled to his prejudice and thereby induced to forego the advantage or remedy of paying the debt and taking an assignment thereof against Blackiston, which Hazel in his testimony swears he would have done if no such promise had been made. This constitutes a case of constructive fraud upon Hazel, which operates to his discharge. *Wilds* v. *Attix,* 4 Del. Ch. 253.

If a creditor does any act injurious to the surety or inconsistent with his rights, or if he omits to do any act when required by the surety, which his duty enjoins him to do, and the omission proves injurious to the surety, the latter will be discharged, and he may set up such conduct as a defense to any suit brought against him, if not at law, at all events in equity. Story, Eq. § 325.

*George V. Massey,* for the defendant:

I. Where a party invokes the aid of a court of equity to be relieved, on the ground of usury, from his contract, he can only successfully do so upon terms,—*i. e.,* that he will pay what is really due under the contract, deducting the usurious interest. 1 Story, Eq. ¶ 301, and cases. cited in footnote; *Pearson* v. *Bailey,* 23 Ala. 537.

II. Although the judgment in controversy was entered on a bond with warrant of attorney tainted with usury, it is not therefore void at law; and relief against the usury can only be had in chancery; and such judgment. will, in a court of equity, be regarded as a valid security for the money actually loaned and advanced, with lawful interest. *Pearson* v. *Bailey,* 23 Ala. 537; *Fanning* v. *Dunham,* 5 Johns. Ch. 142; *Beach* v. *Fulton Bank,* 3 Wend. 584, 585.

III. The creditor is not bound to any active diligence or effort to enforce payment from the principal debtor. 2 Story, Eq. § 326, and notes; Adams, Eq. pp. 570–572, and. notes; *Rees* v. *Berrington,* 2 Lead. Cas. Eq. *974, 1009; *Wilds* v. *Attix,* 4 Del. Ch. 253.

Indulgence will not relieve surety. No agreement for delay or further time, unless predicated upon a consideration which could be enforced by the principal debtor against the creditor, will avail the surety. A stay of execution will not do so. *Houston* v. *Hurley,* 2 Del. Ch. 248; *Rees* v. *Berrington,* 2 Lead. Cas. Eq.*1009; *Janvier* v. *Sutton,* 3 Harrington, 37, and note; *Hickman* v. *Hickman,* Id. 484.

IV. While it is not admitted that there is any suffi- cient proof to establish any promise, on the part of the creditor in this case, to release the surety, it is contended that such promise, if satisfactorily proved, could not avail. the complainant for the following reasons: (1) There was no consideration to support it, and it is therefore

*nudum pactum;* (2) being without consideration the complainant did not and could not rely upon it; (3) the theory of constructive fraud cannot be maintained,. because it is not sufficiently proven that the complainant had taken any steps toward other means for his indemnity, which he would have adopted but for his reliance on the defendant's promise; (4) the burden of proof is on the complainant clearly to establish such promise, and also that he was thereby prevented from taking other steps for indemnity which he was about to take, and would have taken but for such promise. *Wilds* v. *Attix,* 4 Del. Ch. 263.

THE CHANCELLOR.—The complainant in this cause seeks to restrain the defendant from the collection, by execution process, of the amount of a judgment, being $1,100, with interest from the 14th day of December,. 1872, and costs. This judgment purports to have been entered by confession on warrant of attorney.

The complainant states in his bill that on or about the 19th day of May, 1873, he was called upon by Benjamin F. Blackiston, who stated to him that he (Blackiston) had made arrangements with Zenas W. Sinex, the defendant, to borrow of Sinex the sum of $500; that Blackiston requested the complainant to become his surety for said loan, at the same time stating that Edward Beck would become his cosurety; that the complainant consented to become cosurety with the said Beck for the said Blackiston for the loan about to be made to him by the said Sinex; that Blackiston and he were in the field on his premises at the-time of the conversation between them; that Blackiston produced pen and ink and a blank judgment bond,—the blanks therein being for the names of the obligor, obligee, amount, date, and time of payment;. that the complainant then and there signed the said

blank judgment bond opposite the second seal at the
bottom thereof, and handed the same back to said Black-
iston, when said Blackiston left the complainant in the
field to pursue his work of ploughing.

The complainant avers in his bill that when he signed
the printed blank judgment bond, neither the said Black-
iston nor the said Beck had signed the same; and that .
the blanks in said bond for the names of the obligors,
obligee, amount, date, and time of payment were then
unfilled. He also avers and charges that the sole pur-
pose and intention for which he signed said blank printed
judgment bond was to enable the said Benjamin F.
Blackiston to borrow of the said Zenas W. Sinex about
$500, and for no other intention or purpose whatsoever,
and that it was his understanding at the time he signed
said blank judgment bond as surety for said Blackiston
that the same was to be made payable to the said Zenas
W. Sinex; that the real debt thereof was to be about
$500, and that the same was to bear date on or about the
day on which it was signed by him, to wit, on or about
the 19th day of May, 1873.

The complainant also states that after he had so signed
and handed back the said bond to Blackiston, he heard
nothing of it until some time after the 6th day of March,
1874, when he learned that a judgment had been entered
against him in the Superior Court of the State of Dela-
ware in and for Kent County, at the suit of Zenas W.
Sinex, assignee of Martin L. Smith, for the real debt of
$1,100, with interest from the 14th day of December,
1872; and about the same time learned that judgments
had also been entered severally in said court against said
Benjamin F. Blackiston and the said Edward Beck, at
the suit of Zenas W. Sinex, assignee of Martin L. Smith,
for like amount; and that upon inquiry he learned that
the blanks in said judgment bond, which he had signed

as surety for said Blackiston in blank, had been filled by
inserting the name of Martin L. Smith as the obligee, in-
stead of Zenas W. Sinex, and by inserting the sum of
$1,100 as real debt thereof instead of about $500, and by
antedating the same so as to make it bear date as the
14th day of December, 1872, instead of about the 19th
day of May, 1873, when, in fact, it was signed by the
complainant. .

The complainant expressly avers and charges in his
bill that the name of Martin L. Smith was inserted as
the obligee in said blank printed judgment bond; that
the real debt thereof was made $1,100 instead of about
$500; and that the same was antedated so as to bear the
date of the 14th day of December, 1872, instead of about
the 19th day of May, 1873, without his knowledge or
consent, and contrary to his distinct understanding when
he consented to become surety for the said Blackiston as
aforesaid, and when he signed the said blank printed
judgment bond as such surety.

The bill then charges that no consideration whatever
was ever given or paid, or agreed to be given or paid, by
the said Martin L. Smith to the said Benjamin F. Black-
iston, for the said judgment bond; and that the same as
between the said Benjamin F. Blackiston and the said
Martin L. Smith was without consideration; and the said
Zenas W. Sinex never paid or agreed to pay to the said
Martin L. Smith any consideration whatever for the
assignment to him, by the said Martin L. Smith, of said
judgment bond; and that as between the said Zenas W.
Sinex and the said Martin L. Smith the said assignment
of the said judgment bond was wholly without consider-
ation; that the said Zenas W. Sinex and said Benjamin
F. Blackiston had made as between themselves a corrupt
and unlawful agreement and bargain, whereby the said
Zenas W. Sinex was to take for the loan or use of the

money he was about to lend to the said Benjamin F. Blackiston more than $6 for the loan or use of $100 for one year, and in that proportion contrary to the statutes of the State of Delaware against the taking of usurious interest; and for the purpose of evading such statutes he the said Zenas W. Sinex, suggested to the said Blackiston that the name of Martin L. Smith should be inserted as the obligee in said bond, and that the same should be assigned by the said Smith to the said Sinex; and that in pursuance of said corrupt and unlawful agreement and bargain the said Zenas W. Sinex did procure the said Martin L. Smith on the 19th day of May, 1873, to assign said bond to the said Sinex; and that said corrupt and unlawful agreement and bargain was entirely unknown to the complainant at the time he signed the blank printed judgment bond as aforesaid; and that he learned about the same after the 6th day of March, 1874, and after the said judgment had been entered against him in the said superior court as aforesaid.

Sinex, the defendant, in his answer and testimony, denies all knowledge of the circumstances under which the bond was executed, and of the bond, until about the time the same was assigned to him.

Blackiston, who was examined as a witness on the part of Sinex, denies that the bond was signed by the complainant in blank, and says that when the complainant signed the bond all the blanks therein were filled up as they were at the time of his examination as a witness.

The proof, therefore, on this subject is equally balanced, Hazel, the complainant, and Blackiston, the witness, swearing directly the contrary in respect thereto.

Blackiston, in his answer to the second cross-interrogatory to the third interrogatory in chief, says: "As I have already stated in my answer to the third interrogatory in chief, the consideration for the assignment of the

said bond by Smith to Sinex was a note for $624, which Sinex then held of mine and which he gave up to me at the time of the assignment, and $376 in money which he paid me in cash at the time of the assignment. This note of $624 represented two notes that I had previously given Sinex,—one for $500 for a loan of $440, and the other for $100 for a loan of $80; and $24 in money which I had agreed to pay Sinex for the renewal of the note of $100. These two notes and $24 had been merged into one note for $624. This note of $624 is the note which Sinex gave me at the time of the assignment. No consideration for the assignment of said bond passed from the said Sinex to the said Smith. All the consideration that passed for the assignment of the said bond passed from the said Sinex to myself; and the said Martin L. Smith, the obligee in and assignor of said bond, received no consideration for said assignment."

Sinex, the defendant, who was examined as a witness on his own behalf, in his answer to the second cross-interrogatory to the complainant's third interrogatory, says: "The consideration for the assignment of said bond was two notes which, at the date of assignment, I held against the said Blackiston,—one for $500 and the other for $100,—which I gave up to him at the time of the assignment, and my note or due bill (the amount of which I do not now remember) which I gave Blackiston at the time of the assignment and which I afterwards paid to Blackiston in different installments, and the sum of $22, being the interest which had accrued on the bond up to the assignment and which I also afterwards paid him. No consideration passed from me to the said Martin L. Smith, the assignor, for the assignment of the said bond, but the whole consideration for said assignment passed from me to the said Benjamin F. Blackiston. The said Martin L. Smith received no consideration for said assignment."

In fact there was no money paid to Blackiston at the time of the assignment, and no consideration for it, except the notes which Sinex held against him, and Sinex's note for the difference between them and $1,000. The $100 making $1,100 being allowed, as Sinex modestly states, as discount to Sinex on the judgment note or bond, the execution of which is sought against the complainant. Instead of discount Sinex should have called it by its right name, usury.

It is nowhere pretended that Blackiston or Hazel and the other surety owed Martin L. Smith anything. On the contrary it sufficiently appears, from the testimony in this cause, that Martin L. Smith had no real interest whatever in the judgment bond which he assigned to Sinex. Sinex says (or perhaps it was Blackiston; it was, however, one or the other of them) that Blackiston had been trying to negotiate this bond or raise money upon it through Smith, but failed to do so. Blackiston also states that Sinex promised to give him the money on the bond when it should be assigned to him, but did not do so, and that the consideration for the assignment was that which he discloses in his testimony. It is evident that Smith had no assignable or real interest in the said bond; and for aught that appears to the contrary he was a mere go-between, between Blackiston and Sinex.

Sinex's defense to the complainant's bill is covered all over with usury, and has no merit in law or equity. According to the testimony of Blackiston, his own witness, every ingredient in the consideration for the assignment was fraudulent and usurious. The notes of which Blackiston speaks, and the notes which Sinex says he delivered up to Blackiston, in part consideration of the assignment of the bond upon which these several judgments were entered, as well as the bond itself, were usurious, and, according to decisions of the courts of law in

this State, were absolutely void. To an assignment of them usury might have been pleaded.

It is true that in a court of equity a party seeking to avoid the payment of a usurious debt must tender in his bill the amount really and truly due; for he that seeks equity must do equity. And a party to the usury shall not be relieved against a usurious transaction, unless he tenders himself ready to pay the amount truly and justly due. But this applies to a party to the usury, to the borrower, not to the surety, if he be not a party to the usury and is ignorant of all knowledge in respect to it. Such an one may be relieved without tendering himself ready to pay anything; therefore, the complainant in this case was not bound to tender in his bill himself ready and willing to pay, and was not bound to pay the $376 in money, for which amount Sinex gave his due-bill or note, and which he afterwards paid. The whole transaction between Sinex and Blackiston was fraudulent and void at law, prohibited by the Acts of Assembly; and it has no merits in this court. And for this reason I decide that Hazel, the innocent surety, is not bound to pay the judgment, which is sought to be put in force against him.

Upon the second point maintained by the complainant, that the stay of the execution by Sinex against Blackiston is a discharge against him as surety, I remark that: (1) the law favors a surety and watches his position and his rights; (2) as a general rule an implication that he is discharged is raised, if the creditor and principal debtor by agreement vary the terms of the original contract, or if the creditor takes a new security from the principal debtor in the place of the old one, or if the creditor discharge the principal debtor, or if the creditor discharge a cosurety, or if the creditor give time to the principal debtor; (3) the surety is, generally speaking, discharged

through the fault of the creditor in releasing securities received by the creditor from the principal debtor; (4) an abandonment of the creditor of an execution against the principal releases the surety, because the creditor is a trustee of the execution (*Mayhew* v. *Crickett*, 2 Swanst. 185. See also 3 Esp. 49, 50; 2 B. & P. 61; *Williams* v. *Price*, 1 Sim. & Stu. 581); (5) in order to effect the discharge of the surety, it must appear both that there has been a loss, and that such loss was caused by the fault of the creditor.

It was decided in *Miller* v. *Porter*, 5 Humph. 294, that a mere stay of execution by the plaintiff will not discharge the surety from the debt; and in *Springfellow* v. *Williams*, 6 Dana, 236, that the mere act of staying an execution by the creditor, without any restrictions upon the right to issue another immediately, does not discharge the liabilities of the sureties of the debtor. And it is said in *Bailey* v. *Gould*, Walk. Ch. 478, that a creditor may extend the time for his debtor to pay him without discharging the sureties, if he, by the same agreement, in express terms, reserves his remedy against him.

It was said in *Buchanan* v. *Bordley*, 4 Harr. & McH. 41, that a mere forbearance to sue the principal, which a court of equity on application of the surety might direct the creditor to do, upon pain of foregoing his claim against a surety, is not sufficient.

In *Cooper* v. *Wilcox*, 2 Dev. & B. Eq. 90, it appears that an execution was in the sheriff's hands against one Alston, a principal debtor, and that when the return day of execution was at hand, and the sale about to take place, Wilcox, the plaintiff, upon the prayer of Alston, and without the knowledge of his sureties, directed the sheriff to forbear the sale and return the execution indulged upon Alston's paying the costs, sheriff's commission, and $128 in part of the debt. Upon this arrange-

ment being made, the goods were left with Alston and afterwards were either disposed of by him, or taken by other creditors and sold at execution. Now the payment of the costs, sheriff's commission, and $128, was in relief of the sureties to that extent, and was not something additional paid to the principal in consideration for his forbearance.

Gaston, *Judge*, upon this statement of facts, said: "There is nothing in the relation of principal and surety between two persons directly liable to the creditor, which imposes on him the duty of active diligence against the principal debtor. Mere forbearance or delay in collecting from the principal debtor furnishes no ground on which the surety can ask for exoneration. But if the creditor do any act for the ease of the principal, without the privity of the surety, by which act the surety is injured or exposed to injury, that act may be laid hold of for the surety's relief. One has not the right to be charitable at his neighbor's cost. The creditor stepping forward to relieve the principal should remember the situation of the surety, and not extend this relief to his injury without his assent—unless he choose to release the surety. Accordingly it is well settled that if the creditor, from benevolence or favor to the principal debtor, relinquish a security which he has for the debt, or gives up funds in his hands applicable to its payment, the surety will be exonerated to the extent of that security, or of those funds. Thus in *Mayhew* v. *Crickett*, 2 Swanst. 191, it was holden to be clear that if a creditor takes the goods of the principal debtor in execution, and afterwards withdraws that execution, he discharges the surety *pro tanto.* So in *Law* v. *East India Co.* 4 Ves. Jr. 829, it was considered as incontestable that where a creditor has a fund of the principal debtor, sufficient for the payment of the debt, and gives it back to the debtor, the surety can never

3

afterwards be called upon. The creditor by virtue of the seizure in execution or of the deposit becomes a, trustee of the security so acquired, or of the fund for the benefit of all concerned, and is responsible to any party injured by unfaithfulness in execution of that trust; for it is a rule that if he be not only creditor, but trustee, then even his neglect, if it occasion the loss of that to the benefit of which the surety is entitled, will *pro tanto* discharge the surety. *Capal* v. *Butler*, 2 Sim. & Stu. 457; 1 Cond. Eng. Ch. Rep. 543."

In applying the principle to the case before him, *Judge* Gaston further remarked : " After Wilcox had levied his execution on Alston's goods, these became a specific and full security for the payment of the debt; and this security, out of benevolence to Alston, he has relinquished, or at all events has by his act rendered ineffectual. In justice he must be regarded as having thus interfered with the collection of the debt at his peril, and not at the risk of those who neither consented to the course pursued nor were consulted respecting it. The principle is spoken of as one of equity, but it prevails in all courts where the relation of principal and surety can be recognized. It is in truth but a consequence of the moral injunction so to exercise one's rights as not to injure others."

The case of *Cooper* v. *Wilcox* was, in my opinion, properly decided.

In the case of *Mayhew* v. *Crickett*, 2 Swanst. 193, it appears that the defendants entered up judgment on a warrant of attorney against Batterly, and issued an execution thereon, and entered into possession of his dwelling-house and the stock in trade and other effects therein; and after continuing several days in possession without consulting or apprising the plaintiffs, who were sureties of Batterly, withdrew the execution, Batterly paying the

expenses. Batterly becoming embarrassed, the sureties were called upon for payment, which they refused. The *Lord Chancellor*, among other things, said: "I always understood that if a creditor takes out execution against a principal debtor, and waived it, he discharges the surety, on an obvious principle, which prevails both in courts of law and in courts of equity."

The principle, in a subsequent part of his opinion, he states to be that a party taking out his execution is a trustee of his execution for all parties interested.

In the syllabus of the case of *Houston* v. *Hurley*, 2 Del. Ch. 248, it is said: "A surety in a debt for which judgment is recovered against a principal is not discharged by a stay of execution, if such stay is required by statute; . . . nor is such surety discharged by a mere stay of execution after a levy." *Chancellor* Harrington, in his opinion in this case, says: "A surety is not discharged by mere indulgence or delay in suing or executing the principal. Lifting the levy and releasing the goods levied on is another thing, and is an injury to the surety to the amount of the property released. If the benefit of some securities for a debt is lost by the neglect of the creditor, the surety is *pro tanto* discharged. I am therefore of opinion that the release of this levy on Houston's goods was an injury to his surety; and, being without his consent, it is a release of his obligation of suretyship to the extent of the value of the goods given up. . . . But I do not know of any decided case, and cannot perceive any principle of equity, that will make such a stay of proceedings and release of goods levied on an absolute release of the surety. It does him no wrong beyond the value of the goods released. The creditor has the right to forbear execution, and the surety has a remedy, if he desires it, to obtain further execution."

This opinion, however, does not meet the precise question raised in this case, which is not whether a surety is discharged by mere indulgence of delay in issuing or executing the principal, or whether the release of a levy against the goods of a principal debtor, without the consent of a surety, is a release of the obligation of a suretyship to the extent only of the goods given up. The question is whether Sinex, the judgment creditor,—having sued out his execution against Blackiston, the principal debtor, and having thereunder levied upon his goods and chattels sufficient to pay the debt; and having after the levy under the *fieri facias* issued a *venditioni exponas*, and advertised the goods and chattels for sale; and having, as we may reasonably infer from the testimony of Blackiston, caused the advertisement of sale to be torn down; and also having before Blackiston's public voluntary sale, about the 2d day of February, 1877, indorsed on the *venditioni exponas* which followed the *fieri facias* theretofore issued, under which Blackiston's goods, etc., had been levied upon, a direction to the sheriff in these words: "Stay this writ till further orders, Feb. 2, 1875. Z. W. Sinex," so that no further execution might be issued until the ensuing term of the superior court, or the said writ of *venditioni exponas* be further prosecuted, without his further orders; and there being no indication on his part of keeping his execution under his own control so that he might, if he chose so to do, order the sheriff to proceed thereon before said ensuing term of said court; and the execution having been returned "stayed" to said court without any intervention of his to the contrary; and he not having thereafter caused any further writ to be issued upon said judgment; and the goods and chattels of Blackiston having been, after the time of the stay of the execution, extensively advertised by said Blackiston for public sale, and sold by him at

such sale (which was early in the month of February, 1877), which was about two years after the writ of *venditioni exponas* had been stayed by the said Sinex, and while said levy was alive and in full force ; which public sale by Blackiston was in the neighborhood of the residence of said Sinex, and the said goods not having been caused to be followed by the said Sinex,—has not, by his acts and indulgence to the principal debtor, Blackiston, without the consent of Hazel, the surety, injured the surety to the extent of the value of Blackiston's goods so levied upon ; and whether the surety is not thereby *pro tanto* discharged, and in fact fully discharged,—the value of the goods levied upon in this case appearing to have been sufficient to pay the debt.

This precise question has never, to my knowledge, been decided in this State.   The case of *Houston* v. *Hurley* certainly does not decide it.

This is a much stronger case, in my opinion, than the case of *Cooper* v. *Wilcox*, 2 Dev. & B. Eq. 90, decided by *Judge* Gaston.   In that case the plaintiffs simply directed the sheriff to forbear the sale, and returned the execution " indulged," upon Alston's paying the costs, sheriff's commissions, and $128 in part of the debt.   In this case the return made to the court was " stayed by order of the plaintiff."

I do not decide that the mere order of a plaintiff to stay an execution while the same shall be in the hands of the sheriff, under the control of the plaintiff therein, and subject to any further· order he may make in respect to it, and free from all suspicion of fraud, will in itself discharge the surety.   But I am of opinion that,—considering all the circumstances of the case, and all the facts in this cause, and the value of the goods of Blackiston levied upon as the principal debtor under the execution of Sinex,—the public sale of these goods by Blackiston,

owing to the stay of execution by Sinex before the sale by Blackiston,—no further execution having been issued after the stay of the *venditioni exponas* two years before the dispersion of said goods by said sale, which was in the immediate neighborhood where Sinex resided; and no attempt having been made by Sinex to cause his execution to be made effectual after he had ordered it stayed, and before the ensuing term of court; and the failure of Sinex to cause said goods to be followed under his levy, which had not then expired,—were evidence, to be considered by this court, of fraud, and of his intention to injure the complainant, the surety, and to cause the debt to be paid by him instead of the principal. He must be held to have actively interfered with the proper execution of his writ, and to have willfully suffered and permitted the dispersion of the goods of the principal, to the injury of the surety, and thus to have released the surety from liability in equity to pay the debt.

It is no answer to say that Hazel might have paid off the judgment and taken an assignment of it, and made the amount of the execution out of the goods and chattels of Blackiston.

It is true Hazel swears that he would have done so, had he not been misled and deceived by Sinex, who had promised to satisfy the judgment against him. He was not bound to pay off the judgment and take an assignment of it, because the judgment was fraudulent and void in law, according to the decisions of the law courts in this State. And upon the attempt being made by him, as assignee thereof, he would have been or might have been, met with this patent objection.

The right, under our Act of Assembly, of a surety to pay off a judgment and take an assignment of it, and collect the amount thereof in the name of the plaintiff therein, or as his assignee, does not deprive the surety of

the right of subrogation, or any other right which he may have in respect thereto in this court. In the present case, as in any other case, this court would compel the plaintiff in the judgment, upon being indemnified against costs by the surety, to proceed at law against the principal therein, to make the amount of the debt out of the goods and chattels, lands and tenements, of the principal debtor.

Sinex, the creditor in this case and plaintiff in the judgment, attempted to do, without an order of this court and without security against costs, what a court of chancery would have compelled him to do, upon application of the surety. Can it be doubted that in case he had proceeded, under an order of this court, to collect the debt, and had stayed his execution, and the goods and chattels of Blackiston in consequence thereof had been sold and dispersed, and Hazel, the surety, had thereby suffered an injury to the extent of the value of said goods and chattels, the surety would not thereby have been discharged? Where is the difference in principle between acting under an order of this court, and acting voluntarily without an order of this court? Would he not be a trustee of his execution for all parties interested as well in the one case as in the other? If not, why not?

I shall decree the preliminary injunction, heretofore ordered, to be perpetual.