MAXWELL B LEITER,

*vs.*

JEANNETTE V. V. CARPENTER, formerly known as JEANNETTE
V. V. HOLLIDAY.

*New Castle, October 31, 1941.*

*William Poole* and *Thomas Herlihy, Jr.,* for complainant.

*Clarence A. Southerland* and *Paul Leahy,* of Southerland, Berl, Potter & Leahy, (Daniel F. Wolcott, on the brief) for defendant.

THE CHANCELLOR: This is a subrogation bill in which the complainant, a guarantor, seeks reimbursement for money paid for the defendant, who was primarily liable for the debt.

On May 14th, 1929, the defendant, Jeannette V. V. Holliday, now Jeannette V. V. Carpenter, became the equitable owner of certain property in Harrisburg, Pennsylvania, the legal title to which was taken in the name of the Commonwealth Trust Company, a corporation of that State. At the time of the purchase, there were two mortgage liens on the property, both of which were accompanied by bonds which were not entered. The first mortgage was for the principal debt of $30,000.00, and was held by one Ira P. Romberger. The second mortgage was held by the Commonwealth Trust Company, of Harrisburg, Pennsylvania, and the balance of the principal debt then due thereon was $14,000.00 When Jeannette V. V. Carpenter acquired the beneficial interest in the property, she expressly assumed payment of both of these debts by an instrument under seal executed by her. As a part of the same transaction, Leiter, the grantor, and the complainant in this bill, guaranteed the

payment of the second mortgage debt to the holder of it, if default should be made by the "person or persons primarily liable therefor." The defendant subsequently defaulted in the agreed payments on that mortgage, and on September 15th, 1932, it was foreclosed, and the property bound thereby was sold for $1341.06, subject, however, to the first mortgage for $30,000. The Commonwealth Trust Company, the assignee of the second mortgage, demanded payment from Leiter, the guarantor, of the balance of the principal debt, together with interest due thereon, and on October 4th, 1932, he paid that balance, which then amounted to $11,302.50. Leiter now seeks to compel the defendant, the primary debtor, to reimburse him for the amount paid, with interest, and to that end asks that he be subrogated to all the rights of the said Commonwealth Trust Company against the said defendant. Mrs. Carpenter, among other things, claims that when Leiter paid the balance due on the second mortgage and the bond accompanying it to the Commonwealth Trust Company, the debt was fully discharged and extinguished for all purposes. She, therefore, claims that he can acquire no rights in equity under her contract.

"Subrogation" is an equitable right, originally borrowed from the civil law. *Ierardi v. Farmers' Trust Co.,* 4 *W. W. Harr.* (34 *Del.*) 246, 151 *A.* 822; *Enders v. Brune,* 4 *Rand., (Va.)* 438; *Nelson v. Webster,* 68 *L. R. A.* 520, *note; 2 Bouv. Law Dict. Rawle's Third Rev.,* 3166.

*Pothier,* in his *Treatise on Obligations,* says that under the civil law

"* * * It is to be holden, as a principle, that all who are bound for a debt for others, or with others, by whom they ought to be discharged either for the whole or a part, have a right, in paying such debt, to require the cession of the actions of the creditor against the other debtors, who are liable for it * * *."

See *Burrus v. Cook,* 117 *Mo. App.* 385, 93 S. W. 888.

Applying somewhat similar principles, "subrogation" has become the equitable "substitution of another person in

the place of the creditor to whose rights he succeeds in relation to the debt" paid. 2 *Bouv. Law Dict., Rawle's Third Rev.,* p. 3167; *Hardcastle v. Commercial Bank,* 1 *Har.* 374, *note; Kimberley. & Carpenter v. National Liberty Ins. Co.,* 5 *W. W. Harr.* (35 *Del.*) 63, 157 *A.* 730; *Enders v. Brune, supra; Ohio Life Ins., etc., Co. v. Winn,* 4 *Md. Ch.* 253; see also *Dodd, Adm'r., v. Wilson,* 4 *Del. Ch.* 108, *Id.,* 4 *Del. Ch.* 399.

At common law, the payment of the debt, whether by the primary obligor, or by a person secondarily liable thereon, wholly extinguished it. *Gannon v. Stone,* 1 *Ves. Sr.* 338, 27 *Eng. Reprint* 1068; *Woffington v. Sparks,* 2 *Ves. Sr.* 570, 28 *Eng. Reprint* 363. Whatever the early English rule might have been (see *Kinkead v. Ryan,* 64 *N. J. Eq.* 454, 53 *A.* 1053; 1 *White & Tudor's Lead. Cas. in Equity,* 65 *Law Library.* *p. 69, note to Dering v. Earl of Winchelsea),* prior to the enactment of 19 and 20 *Victoria, Chapter* 99, *Section* 5, courts of equity in that country had long followed somewhat the same rule in subrogation cases, and had regarded a debt, though paid by a person only secondarily liable thereon, as absolutely extinguished for all purposes. *Copis v. Middleton, Turn. R.* 223, 27 *Eng. Reprint* 1083; *Hodgson v. Shaw,* 3 *Myl. & K.* 182, 40 *Eng. Reprint* 70; 4 *Pomeroy's Eq. Jur.* (*4th Ed.*) § 1419, *note;* 1 *White & Tudor's Lead. Cas.,* 65 *Law Library,* *p. 70, note to Dering v. Earl of Winchelsea.* Applying that rule, in England prior to the Statute of Victoria, a surety or guarantor who had paid the creditor's debt could not be subrogated to any of his rights in, or remedies on, the original obligation. Id. He was confined to collateral rights and remedies held by the creditor, for whom in equity he was substituted. *Id.* The English cases squarely laying down that rule were not decided until after the American Revolution, but they were said to have been based on well established principles. Id.

A broader rule, more consistent with the old civil law and with right and justice, has been adopted, however, in

most jurisdictions in this country, including this State. *Hardcastle v. Commercial Bank,* 1 *Har.* 374, *note; Dodd, Adm'r., v. Wilson,* 4 *Del. Ch.* 108; *S. C.* 4 *Del. Ch.* 399; *Miller v. Stout,* 5 *Del. Ch.* 259; 4 *Pomeroy's Eq. Jur.,* (4th Ed.) § 1419, *note;* 68 *L. R. A.* 528, *note;* see also *Wharton v. Clements,* 3 *Del. Ch.* 209; *Hazel v. Sinex,* 6 *Del. Ch.* 19, 6 *A.* 625; *Merriken v. Godwin,* 2 *Del. Ch.* 236; *Fulton v. Harrington, et al.,* 7 *Houst.* 182, 30 *A.* 856. Under that rule, in the absence of other controlling equities, the surety or guarantor who pays the creditor's debt is ordinarily subrogated to all of his rights and remedies, of every nature, against the principal, for its collection. Id. See also 5 *Pomeroy's Equitable Remedies,* (2d Ed.) §§ 2345, 2351.

In *Hardcastle v. Commercial Bank, supra,* Chancellor Harrington, then Chief Justice of the old Supreme Court, aptly said:

"The general principle of equity undoubtedly is, that a surety paying the debt of his principal is entitled to stand in the condition of the creditor; to be substituted in his place in relation to the principal debtor, is entitled to the benefit of all remedies which the creditor may have against such principal; and may require an assignment of all securities either original or collateral which the creditor may hold against the principal to perfect his remedy for the demand which by paying the debt he acquires against the principal. This is a rule of equity independent of our statute [§ 3407, *Rev. Code* 1935]; founded on the first principles of justice and propriety that he who in fact owes the debt shall pay it, and that he shall be as much bound to pay to his surety who is compelled by the creditor to discharge the debt as he was bound to pay the creditor himself."

The statute referred to by the court is of no importance in this case. Precisely the same principles apply to a guarantor.

The theory of such cases seems to be that, applying somewhat the same equity which seeks to prevent the unjust enrichment of one person at the expense of another, payment by a person only secondarily liable will discharge the debt, so far as the creditor is concerned. But so far as

the primary debtor is concerned, the surety or guarantor making the payment, and who relies on the right of subrogation, is regarded as a purchaser, and the equitable assignee of the debt. *Hill v. King*, 48 *Ohio St.* 75, 80, 26 *N. E.* 988; 3 *Pomeroy's Eq. Jur.*, (*4th Ed.*) § 1212, *and note;* 4 *Pomeroy's Eq. Jur.*, (*4th Ed.*) § 1419, *note;* 1 *White & Tudor's Lead. Cas.*, 65 *Law Lib.*, *p.* 88, *note to Dering v. Winchelsea;* 25 *R. C. L.* 1314. In such circumstances a relation somewhat analogous to a constructive trust arises in favor of the guarantor. 5 *Pom. Eq. Rem.*, (*2d Ed.*) § 2343; see, also, *Hayes v. Ward*, 4 *Johns. Ch.* (N.Y.) 123, 8 *Am. Dec.* 554.

At the time of the purchase of the property, on May 14th, 1929, the defendant, by an instrument under seal, expressly assumed and agreed to pay the second mortgage debt to the Commonwealth Trust Company.

Applying the above principles, the complainant is subrogated to all of the original rights of that corporation against the defendant, under that contract, in so far as may be necessary to reimburse him for the debt paid. See *Smith v. Swain*, 7 *Rich. Eq.*, (*S.C.*) 112, which involved somewhat similar facts.

The complainant's rights accrued April 4th, 1932, but he did not file his bill until November 8th, 1939, or more than seven years thereafter. The defendant, therefore, claims that in any aspect of this case, his right to a decree for reimbursement for money paid is necessarily based on an implied contract, and is barred by laches because the three year statutory period of limitations, barring actions of assumpsit at law in this State (3 *Beals Conflict of Laws*, §§ 603, 604.1, *p.* 1620) has long since expired. See *Bovay, et al., v. H. M. Byllesby & Co.*, 25 *Del. Ch.* 1, 12 *A.* 2d 178; *Dodd, Adm'r., v. Wilson*, 4 *Del. Ch.* 399; *Pickering v. Leiberman*, (D. C. Del.) 41 *F.* 376; 5 *Pom. Eq. Rem.* (*2d Ed.*) § 2351, *note.* The defendant also claims that subrogation is a mere incident to that contract right, and is likewise barred. See also 5 *Pom. Eq. Rem.*, (*2d Ed.*) § 2351, *note;* 60 *C. J.*

827; 25 *R. C. L.* 1395. But the conclusion reached by this court in *Dodd v. Wilson, supra,* cannot be reconciled with that contention. See *Smith v. Swain,* 7 *Rich. Eq.* (*S. C.*) 112; *Smith v. Davis,* 71 *W. Va.* 316, 76 *S. E.* 670, 43 *L. R. A.* (*N. S.*) 614; *Kinkead v. Ryan,* 64 *N. J. Eq.* 454, 53 *A.* 1053, modified on other grounds, 65 *N. J. Eq.* 726, 55 *A.* 730. Ordinarily subrogation depends upon principles of equity and natural justice growing out of the relation existing between the parties, rather than upon any semblance of contract rights. *Hardcastle v. Commercial Bank,* 1 *Har.* 374, *note; Miller v. Stout,* 5 *Del. Ch.* 259; *Kimberley, et al., v. Nat. Liberty Ins. Co.,* 5 *W. W. Harr.* (35 *Del.*) 63, 157 *A.* 730; *Hayes v. Ward,* 4 *Johns. Ch.* (N. Y.) 123, 8 *Am. Dec.* 554; *Pearl v. Deacon,* 24 *Beav.* 186.

In an action at law, the guarantor can sue the primary debtor in assumpsit on an implied promise for money paid for his benefit (*United States Fidelity & Guarantee Co. v. Gray's Adm'r.,* 6 *Boyce,* 161, 97 *A.* 425; *Smith v. Davis,* 71 *W. Va.* 316, 76 *S. E.* 670, 43 *L. R. A.* (*N. S.*) 614; *Nelson v. Webster,* 72 *Neb.* 332, 100 *N. W.* 411, 68 *L. R. A.* 518, 117 *Am. St. Rep.* 799); but broader rights are involved here.

True, Chancellor Bates said in *Dodd v. Wilson, supra,* that the complainant's right to a mere decree for reimbursement for money paid was based on implied contract. But if there is some sort of a quasi contract relation in subrogation cases, it would seem that it can only "arise out of the equitable relation between the parties, to be inferred from the knowledge of an established principle of equity." *Pearl v. Deacon,* 24 *Beav.* 186. Moreover, in *Dodd v. Wilson, supra,* the Chancellor also clearly recognized that subrogation involved two distinct rights (1) the right to sue for simple reimbursement for money paid for another person, primarily liable therefor; and (2) the right of the complainant, as an equitable assignee of the creditor to enforce all of his original rights against the primary debtor, so far as may be necessary for reimbursement. See also *Smith v.*

*Davis, supra;* 5 *Pom. Eq. Rem.,* § 2351, *supra.* In other words, subrogation in most cases is rather an additional remedy to an action for reimbursement than a mere incidental right. 5 *Pom. Eq. Rem.,* § 2343, *note, supra; Dodd v. Wilson, supra.* This conclusion seems to be corroborated by the fact that it may apply in cases where there can be no simple action for reimbursement. 5 *Pom. Eq. Rem.,* § 2351, *note, supra.*

The statutory period of limitations barring actions of assumpsit at law, does not apply to contracts under seal, and it is not contended that any inequitable circumstances appear. Leiter delayed more than seven years before bringing suit, but in view of the fact that he is the equitable assignee of all of the original rights of the Commonwealth Trust Company under the sealed contract of the defendant, his right of action is not barred by laches.

The defendant's demurrer to the complainant's bill is, therefore, overruled. Her plea also fails to allege any defense to the complainant's right of action, and is insufficient.

An order will be entered accordingly.