Judge Marshall
delivered the Opinion of the Court.
This bill was filed, in May, 1822, by Samuel L. Williams, for the pUrpose of enjoining all further proceedings against him upon a replevin bond executed by Levi L. odd, and the complainant, with others to John String fellow.
The bill states that Stringfellow , having obtained .a judgment against Todd, the latter executed a mortgage 0f ^gg s]aves and considerable personal property to the complainant and Thomas I. and Ashton Garrett, as *237 an inducement and indemnity to them to become his securities in replevying the debt; and that, on the faith of that indemnity, they became his securities in a replevin bond, upon the renewal of which according to the laws then in force, John Williams,- the complainant’s brother, and who was afterwards joined as a co-com- ’ ... . . plainant, became security m the new bond, on the faith of the same indemnity; that, at the maturity of this bond, in the year 1821, an execution .thereon was, with the consent of the mortgagees and Todd, levied on the mortgaged property, and might and would have been satisfied by a sale thereof, but that Stringfeliow, without the knowledge or consent of the complainant, directed the sheriff, upon making four hundred dollars upon the execution, to return it as “ stayed by the order of the plaintiff;” whereby, and by the return of the execution as directed, the complainant alleges that he and the other sureties were released. He further alleges, that other executions, in favor of different plaintiffs,’, were then levied upon the mortgaged property; and that Stringfellow, having had a second execution issued on ..... . . . the replevin bond, caused it to be levied upon the same mortgaged property, and offered and promised that he would give a release to the complainant and John Williams, if the complainant would (for the benefit of his execution) assert the claim of the mortgagees against the foreign executions, and if the deed should be sustained4 by the jury, which, to avoid all difficulty, the complainant states that he did do, and with success; but that Stringfeliow, upon consultation, declined to execute a written release, promising, however, not to consider the sureties further bound, &c. Notwithstanding which, as the complainant alleges, a third execution was issued on the bond, and also an execution for ten per centum damages thereon, and the Garretts being insolvent, and' no property of Todd being found, both of these executions were levied on his property, for the purpose of coercing satisfaction. And, averring that he had never enjoined the debt, nor authorized the use of his name for that purpose, he prays for an injunction.
An ex'on was levied on slaves which were mortgaged indemnity sureties of the ex’on debtor secured by repleym; the creditor m the latter case then issued his execution, levied it on the same slaves, and- solicited the sureties to interpose with, their mortgage , to defeat the first levy— promising to release them in case they succeeded; they did so interpose, and successfully; but afterwards, they joined with their principal in an injunction bill, by which their creditor was restrained, without just cause, from proceeding, until his levy was lost, and the slaves seized and sold under other executions, and passed beyond the creditor s roach. The sureties by interposing with their mortgage to prevent the sale ■under the first levy, on a promise of being released, did no more than it was their duty to have done without the promise; &• that promise, being thus without con sideration, was insufficient to uphold their claim to exoneration. But if they were entitled, in equity, to be relieved from liability on account, either of the stay of the execution, or the promise,their subsequent unjustifiable conduct, by which the levy was lost and the pro - perty eloigned, gave the creditor an equity to haver his debt satisfied By them, and, uhder such circumstances, equity will not interpose to deprive him of his legal advantage. The fact that one of the sureties did not swear to the bill, nor take any active part in obtaining the injunction, or in prosecuting the. suit, is not material, since, instead of disavowing those acts, he acquiesced in the use of his name, as a com - plainant, &. had the benefit of the injunction; and moreover did not avail himself of his'tille, as mortgagee, to preserve the prop-< erty for the debt.
*238 The answer of Stringfellow denies that he released the property on which his first execution was levied, and says he merely agreed to postpone the sale a few days, if a certain portion of the debt was paid; but his written order; dated 17th of August, Í821,- is filed and proved,'by which he directs the sheriff, on making four hundred dollars, to return the execution “ stayed as to the balance by order of the plaintiff.” The defendant also denies that he had promised to release the complainant, except on condition that the property, which was again levied on under the second execution, should be sold; but the allegations of the billion this subject are substantially proved. He alleges that, after the mortgaged property had been proved subject to his second execution (which is proved to have borne date on. the 3rd of September, 1821,) the securities of Todd filed a bill, which was sworn to by one of them (Ashton Garrett) and obtained an injunction staying proceedings on said execution, and thus releasing the mortgaged property, and delaying him in the collection of his debt; that, upon the dissolution of that injunction, with damages', he had issued a third execution on the replevy bond, and one for the damages, which, if levied on the complainant’s property, were rightfully so levied.
The record of the bill and proceedings thereon, referred to in the answer, are exhibited in this record, and show that the bill was filed in the names of all the sureties as complainants; who, alleging that there is great doubt whether, by the interference of Stringfellow in staying his first execution, their lien upon the mortgaged property is not released, and the property subject to other executions equal to its full value, in consequence of all which they claim that they are released— "state that the defendant has, nevertheless, sued out another execution on the replevy bond, against all the parties, and placed it in the sheriff’s hands, and will coex-ce the same unless prevented, &c. They therefore pray for an injunction restraining all further proceedings on said execution till the hearing, and that it may be then perpetuated.
The surety in the injunction bond ( supra ) can stand on no better ground than his principals.
An order for an injunction, according to the prayer of the bill, was obtained from two Justices of the Peace, and on the 19th of October, 1821, an injunction bond, purporting to be in the names of all the complainants, was executed by Ashton Garrett alone, of the principal parties, with Edward Stockton as his surety. This injunction was dissolved at the February term, 1822, of the Fayette Circuit Court, qyid at the March term, 1822, the bill was dismissed without prejudice.
It is proved that when this injunction, of October, 1821, took effect, the 'property mortgaged by Todd to his sureties, had been found subject to Stringfellow’s second execution, and was then hfeld subject to its satisfaction, for which it was deemed amply sufficient; that it would have been sold for that purpose had not the injunction intervened; but that this execution being enjoined, the property was sold for the satisfaction of other executions, then in the hands of the sheriff; and it appears from the allegations of the present bill, that when, after the dissolution of the first injunction, the executions which are now enjoined were issued, there was no property of Todd’s to be found. •
Upon this statement of the pleadings and evidence, the case, on the present bill scarcely admits of discussion.- It cannot be admitted that the mere act of staying the first execution, without any restriction upon the right of the creditor to issue a second one immediately, or as soon as he chose, either discharged the sureties or affected their mortgaged title. Its only immediate affect was to suspend the progress of the remedy. It did not suspend the creditor’s right of coercion; and therefore, did not affect the right of the sureties to compel or to make speedy payment; nor did it in itself materially alter the condition, or increase the risk, of the sureties. The legal title in the property which had been seized under the execution being in them, the stay did not, as in ordinary cases, operate to restore it to the control of the debtor', and thus to subject it to other executions against him. It remained in them upon the stay of the execution, for the benefit of themselves and the creditor, and to the extent of its value, at least, their obligation *240 was unaffected by the stay. What might have been the effect of an unreasonable delay on the part of the creditor, need not be considered. There was no such delay. A second execution Avas issued in a few days,' when the property was still within its reach and unimpaired in value. It Avas of course the duty of the sureties to, co-operate, as far as it was necessary, in subjecting the property to the execution, and their doing so, formed no consideration for the promise of a release, except to the extent admitted in the answer. The property having been seized under the second execution, having been in fact subject to its satisfaction, with the consent of the sureties, and so found by the jury, and having been then amply sufficient to discharge the whole debt — the parties stood substantially in the same condition as before the stay. The sureties were legally liable for the whole debt, but the property of the principal to the value of tide debt being seized in execution, the question of enforcing their liability would not arise, unless in consequence of mismanagement on one side or the other. And this settles the case. -For surely when the question conies up whether the loss consequent upon the dissipation of the property before a sale for the satisfaction of the debt, shall be borne by the creditor or the sureties, the answer necessarily must be that it should be borne by the sureties, whose misconduct in interposing, contrary to their duty and without plausible pretext,' to prevent the sale, has rendered loss inevitable, and not by the creditor, who, but for that interposition, would have sold the property for the payment of his debt, and thus have prevented loss to either party. In this view of the case, the sureties had no equity to set up against the legal right of the creditor to enforce the collection of his debt, and he should have been left to the full benefit of that right.
If it were even conceded that, either in consequenee of the stay of the first execution, or by reason of the subsequent promise of a release, the sureties, as things then stood, should be considered as being equitably entitled to exoneration from their liability, we should still be of opinion that this equity was destroyed by ■ their *241 subsequent acts. By withdrawing the property from its subjection to his debt, and permitting it to be dissipated beyond .his reach, they have created an equity on the part of the creditor, to have his debt satisfied by them. The Court would be the instrument of injustice, if it were to overleap this obvious equity against them, and deprive the creditor of his legal advantage. Their equity, if they ever had any, was destroyed by their own wrongful act.
It is only necessary to add upon this branch of the case, that, although it may be true that the complainant,
Samuel Williams, did not actively co-operate in filing the first bill, or procuring the ‘injunction thereon, yet as he was in fact a party to the bill as complainant, and took the benefit of the injunction, without disavowing In Court the authority of those who used his name, and without having made any efforts to save the property, by means of his legal title, from being sold under other executions, and dissipated, while Stringfellow was prevented by the injunction from subjecting it to his own debt, he cannot, upon any safe principle, be exempted from the consequences of the act. Indeed, upon the face of the record, he is a party participant in it; and if he be not absolutely concluded by the record, there is no proof, but from his own private declarations, that he did not actually assent. He at least acquiesced, and is bound to the consequences. If, therefore, he ever had any equitable right to be released in consequence either .of the stay of the first execution, or of the subsequent promise of Stringfellow, that equity is destroyed by subsequent acts, in which he must be deemed actively or passively to have participated. If he had, as we have supposed, no such equity before the commission of those acts, they could not possibly have given him an equity against Stringfellow. In either case, therefore, whatever equity he may have against his co-sureties or any of them, he has none against the creditor which can affect his legal right to.proceed by execution on the replevy bond. It was consequently erroneous to perpetuate, the injunction.
*242 It appears further, in this record, that a judgment .obtained by Stringfellow, upon the first injunction bond, against Stockton, the surety, &c. was enjoined, by supplemental bill, filed in this case, and tried with the original bill. This incidental injunction stands, in no respect, on better ground than the principal one. And if to be distinguished from it at all, must be placed even on worse grounds'; because it was especially the means of enabling the' sureties to do the wrong which they have- effected, and ought therefore to furnish indemnity • against that wrong. It was of course erroneous to perpetuate this injunction.
Wherefore, the decree of the Circuit Court is reversed, and the cause remanded with instructions to render a decree dissolving the injunction on the original and supplemental bills, with damages, and dismissing said bills, with costs.