# Old Colony Insurance Company v. Berryman Realty Company, et al.

(Decided November 22, 1921.)

## Appeal from Fayette Circuit Court.

1. Insurance—Construction and Operation.—A coverage clause of a fire insurance policy which reads: "$4,000.00 on the three-story brick metal roof building, including all permanent fixtures, occupied for ordinary business purposes and dwelling, situated on the north side of and known as 121 East Main street, Lexington, Kentucky," does not cover and include an addition afterwards built to and connected with the insured building.

2. Insurance—Construction and Operation—Additions.—Unless the coverage clause of a fire insurance policy embraces words indicating the intention of the insurer to cover additions afterwards erected to the insured building, such additions will not be covered by such insurance.

3. Insurance—Apportionment of Loss.—When a fire loss has been adjusted and the total amount payable by the several insurance companies carrying policies on the building has been definitely fixed, an unauthorized apportionment of such loss among the several insurance companies does not prejudice the rights of the insured nor prevent it from recovering the total amount fixed by the adjusters.

4. Insurance—Voluntary Payment—Apportionment.—A voluntary payment by some of the insurance companies of the amount apportioned to them will not discharge the companies so paying, unless such apportionment is the correct and proper amount due from such companies.

5. Insurance—Payment of Part of Loss.—A payment of a part of a fire loss and the taking of a receipt in full therefor, does not discharge the whole obligation, the receipt being only prima facie evidence of satisfaction in full, the actual facts being provable in contradiction of the receipt.

6. Insurance—Pleading.—An answer of fire insurance companies averring that in the adjustment of the loss the insurer falsely represented that a certain wall had been so damaged by fire that the city authorities had directed that it be torn down and that it would have to be torn down; and that in consequence of said representation upon which the companies relied, the insurers paid to the insured a certain sum of money without averring that said representations were made to and relied upon by the adjusters, is subject to demurrer.

J. B. ADAMSON, ED C. O'REAR, GRUBBS & GRUBBS and W. G. DEARING for appellant.

ALLEN & DUNCAN, FRANK M. DRAKE, HUNT, NORTHCUTT & BUSH, SHELBY, NORTHCUTT & SHELBY and GORDON & LAURENT for appellees.

Opinion of the Court by Judge Sampson—Affirming.

In 1911 the Delaware Insurance Company of Philadelphia and the Reliance Insurance Company each issued to J. B. Haggin, of Lexington, a policy of fire insurance for $4,000.00, upon a three-story brick metal roof building, located at No. 121 East Main street, Lexington, Kentucky, for a term of five years from December 27th of said year. The first floor of the building insured was occupied as a retail store. Later Haggin transferred the property to the appellee, Berryman Realty Company and this company acquired additional ground at the rear, upon which it erected a theatre building, joined to the insured building, the whole constituting the Ben Ali Theatre. The first floor of the old building was used as an entrance to the theatre. The two policies of insurance issued by the Reliance Company and the Delaware Company for $4,000.00 each were transferred by Haggin to the Berryman Realty Company about the same time that the three story building at 121 Main street was conveyed to said company. Soon after the completion of the theatre the Berryman Realty Company obtained additional insurance upon the entire building, which insurance was written by the ten following companies: Henry Clay Fire Insurance Company, Insurance Company of North America, Hartford Fire Insurance Company, Aetna Insurance Company, Insurance Company of the State of Pennsylvania, U. S. Fire Insurance Company, Old Colony Insurance Company, Milwaukee Mechanics Insurance Company, Imperial Insurance Company and Fireman's Insurance Company, and this insurance, with that already issued by the Reliance Company and the Delaware Company above mentioned, totaled $79,000.00.

Appellee, Security Trust Compny, held a mortgage against the entire theatre property, including both the old and new buildings, and all of the policies of insurance contained a provision that in case of loss by fire the insurance should go to the Security Trust Company "as its interest may appear."

In January, 1916, a fire occurred in the auditorium of the theatre, causing great damage to both building and fixtures. Immediately notice of the fire was given to all of the insurance companies which had issued policies on the building. Acknowledging liability, the insurance companies selected the Southern Adjustment Bureau of Louisville as their representative for the purpose of ad-

justing the entire loss to the insured building, and the owner, Berryman Realty Company, selected Thomas A. Combs as its representative.   After a conference between the representative of the insurance companies and the representative of the Berryman Realty Company the loss to the building was fixed at $42,250.00, of which sum $42,000.00 was the estimated loss to the new part of the building and $250.00 was assessed as the loss to the old part of the building.   The adjustment company undertook, without authority, to apportion the loss among the several insurance companies in the ratio of the amount of their policies to the whole insurance in force on the building at the time of the fire and in doing so assessed against the Reliance Company on its policy of $4,000.00, issued in 1911, on the old part of the building, before the theatre proper was constructed, $2,139.24, and against the Delaware Insurance Company of Philadelphia the sum of $2,139.24, which these two companies declined to pay, but each offered to pay the sum of $125.00, which was half of the loss suffered by the old building, declaring that the coverage clause of their two policies did not include the new part of the theatre building to which the fire did all but $250.00 of the assessed damage.   All the other companies paid the part of the loss apportioned against them. This action was then commenced by the Berryman Realty Company and the mortgagee, Security Trust Company, against all of the insurance companies named to recover $4,278.48, the unpaid balance of the $42,250.00 which was agreed upon by the adjusters as the amount of the loss sustained.

The coverage clause of these two old policies reads as follows:   ''$4,000.00 on the three-story brick metal roof building, including all permanent fixtures, occupied for ordinary business purposes and dwelling, situated on the north side of and known as No. 121 East Main street, Lexington, Kentucky.''   As these two policies were issued some years before the auditorium of the theatre was constructed and was intended at that time to cover only the three-story brick metal roof building, then used as a retail store and office building, it is insisted by the Reliance and Delaware Companies that the liability of these two companies must be confined to such damage as resulted from fire to the old part of the building, and this is so, unless by subsequent agreement, actual or implied, the coverage clause of the policies was extended so as to include the addition to the building.   Appellants

contend, (1) That the policies of insurance issued by the Delaware and Reliance Companies covered the entire structure and that these companies by their own conduct are estopped to deny this contention; (2) that the payments made by the various appellants to the Berryman Realty Company were accepted and were in full discharge of any liability on the part of the respective appellants; (3) that the court erred in sustaining a demurrer to the third paragraph of the answer of the appellants wherein a counterclaim for $4,254.62 was asserted.

It is not contended that the language of the coverage clause above quoted is broad enough to include the auditorium of the theatre, which was erected after the issual of the policies, but it is insisted that the agent of the two companies who issued the policies verbally assured C. H. Berryman, president of the Berryman Realty Company, that the policies covered and included the entire theatre building, and further that the companies are now estopped to deny liability because they did not cancel their policies, although the said contract contained a clause reading: "If mechanics be employed in the building, altering or repairing the within described premises for more than fifteen days at any one time" the policy shall be void. The only evidence to support the contention that the agent of the companies by verbal agreement extended the coverage clause was given by Hugh W. Young, one of the adjusters, and by C. H. Berryman, president of the realty company. The witness Young testified:

"Mr. Berryman said that the insurance was left to Mr. Irvine, that the writing of the insurance was in the hands of Mr. Irvine, and that the policies were supposed to cover the Ben Ali Theatre. I then asked Mr. Irvine why he did not reform the two policies to make them concurrent with the other, and he said that he was too busy to make all the endorsements that the companies required and that the policies were all right and covered the theatre building."

Mr. Irvine was agent of both the Delaware and the Reliance Insurance Companies at the time of the issual of the policies and at the time of the fire. The testimony of C. H. Berryman on this point is as follows:

"When the Ben Ali Theatre was erected, which materially increased the value of the property covered by these policies, it was necessary for us to increase the insurance, and the new insurance, together with the amount represented by these two policies, was considered suf-

ficient to protect our interests. It was, therefore, our understanding before the fire and after the occurrence of the fire, that these policies were automatically extended to cover the entire property at this location owned by the Berryman Realty Company. In fact the point involved herein was raised during the process of the adjustment, and the agent of the companies, Mr. Irvine, was present and made the statement that it was understood by the two companies named that the theatre portions of these buildings were included in the coverage of these policies.''

There are two general classes of coverage clauses employed in policies of fire insurance. The one copied above is a fair sample of the first class and is not intended to cover additions or alterations made to the insured building after the issual of the policy. The coverage clause contained in the ten policies issued to the Berryman Realty Company after the erection of the theatre is of the second class and reads:

''On the three, two and one story brick, metal and gravel roof building, the contents and communicating additions, including all permanent fixtures for heating and lighting the building occupied and known as the Ben Ali Theatre, situated on north side of and known as 119-121 East Main street, Lexington, Kentucky.'' This clause does cover all communicating additions like the auditorium to the old structure.

It is a rule not denied anywhere that a policy of fire insurance does not cover additions made to an insured building unless the contract so provides. Northwestern Fuel Company v. Boston Insurance Company, 145 N. W. 515.

It is admitted that there was no written agreement extending the coverage clause of the old policies or any modification thereof in writing. There is nothing in the evidence quoted which is inconsistent with the written terms of the coverage clause of the policies issued by the Delaware and Reliance Companies and in the absence of clear and positive evidence of such modification or alteration of the written contract, courts are not authorized to extend, modify or change the plain and unambiguous terms thereof. We, therefore, conclude that the coverage clause of the two policies issued in 1911 by the Delaware and Reliance Companies was not intended to and did not, in fact, cover or include that part of the building which was erected some years after the policies were issued, and that the alleged statements of the agent were

insufficient to extend the insurance to the additions made to the old building. Nor do we think that the conduct of the said insurance companies and their agents in allowing the said policies to continue in force after mechanics had worked upon the building for more than fifteen days, or in continuing the policies in force after the auditorium of the theatre was completed, such buildings being rated as more hazardous than a retail store, sufficient to estop said compaines to deny that said policies extended to and covered the new part of the building. The mere fact that the two companies neglected to cancel the policies as by the terms of the contract the companies had the right to do, did not operate to the disadvantage of the other insurers or to increase the liability of any or either of them beyond the plain terms of the printed contracts, although it may have been bad business policy for the Delaware and Reliance Companies.

It is next insisted that the payments made by the various insurance companies which are now appellants and others to the Berryman Realty Company after the adjustment had been made were accepted by the said Realty Company in full discharge of all liability on the part of the respective insurance companies. At the time the payments were made by the insurance companies a written receipt was taken by each company from the Berryman Realty Company and the Security Trust Company, for whose benefit the insurance was issued, which receipts, except for the name and slight modifications, read as follows:

"Received of Old Colony Insurance Co., of Boston, Mass., A. D. Baker & Co., Managers, Lansing Michigan, March 8, 1916, the sum of seventy-three hundred and forty-eight and 10/100 dollars, being in full payment and compromise settlement of all claims and demands for loss or damage which occurred January 11th, 1916, to the property insured under policy No. 379620, issued at Lexington, Kentucky, agency of said company, in consideration of which said policy is hereby reduced to $4,651.90."

Mr. Berryman testified in substance that at the time he received the drafts from the insurance companies and executed the receipt which is copied, the same was done with the specific and distinct understanding that if the apportionment was found incorrect it would be corrected. This evidence is supported by other witnesses. Mr. Irvine testified:

"Berryman didn't want them to sign the papers under that kind of agreement and they told him, they said: 'We don't want to keep you out of your money; if it doesn't make any difference, if it is not correct, it will have to be made correct.

"Q.  What did Mr. Berryman say in response to that?

"A.  He said that was the only way he would sign it, he would accept it in that way; he said he had been watiing for the money, he needed it because he wanted to go ahead on the repairs."

On cross-examination Mr. Irvine was asked this question:

"Q.  I believe you had already said Mr. Berryman made a statement.  What was that, repeat that?

"A.  He needed the money, was being held out of the money, he needed it badly, wanted to go ahead with the repairing; they told him they didn't want to hold him out of his money, they guaranteed that this apportionment was correct; if it wasn't correct, these companies would all have to come back and pay the difference.

"Q.  Make it correct?

"A.  Yes, sir, make it correct; that is exactly what they said."

The witness Miss Harrison was asked this question:

"Q.  Did Mr. Berryman make any statement to Mr. Brock and the other adjusters there present to the effect that he would not accept the amounts from any of the companies unless the entire amount agreed to be paid was made good?

"A.  Yes, Mr. Berryman made that statement."

Then Miss Harrison was asked:

"Q.  Miss Harrison, do you recall at the time you delivered the draft to Mr. Berryman any statement that Mr. Berryman made to you?

"A.  Mr. Berryman stated to me various times, Mr. Hunt, that it was understood with the adjusters that in accepting the settlement that they were first making, that he did not waive any claim that he might have against the companies for the adjustment of the disputed amount.

"Q.  Did he make that statement to you at the time you delivered the draft to him?

"A.  As far as my recollection serves me, he did."

As all the insurance companies acknowledged liability on account of the loss to the theatre by fire but one thing

remained to be done to definitely and certainly fix the extent of such liability and that was the adjustment. This was accomplished by the selection of representatives of the two contending parties, the insurer and the insured. These representatives met, examined the premises, conferred and fixed the loss to the auditorium of the theatre at $42,000.00, and to the old building or entrance to the theatre at $250.00, making a total of $42,250.00. All parties having agreed to this the claim became a liquidated demand. By the terms of the several contracts of insurance each company was to participate in the payment of the loss in the ratio of the face of its policy to the total amount of insurance in force on the building at the time of the fire. As the total amount of insurance was known to be $79,000.00, and the loss suffered was fixed at $42,250.00, it was merely a matter of mathematical calculation to determine the exact liability of each insurance company when the coverage clause of the policies was properly construed. Applying the rule that, that is definite and certain which can be made so from the facts at hand, each company at the conclusion of the adjustment was indebted to Berryman Realty Company in a definite and fixed sum which could be satisfied only as other obligations by the payment of such sum in full. A partial payment of a debt then due is not a bar to a recovery of the balance due, although the creditor receives the same and issues a receipt in full satisfaction of the entire obligations. DeCoursey v. Dickens, Ky. L. R. 260, vol. 1; Waller v. Martin, 7 Ky. L. R., page 587; Akers v. Central Ky. Asylum, 10 Ky. L. R. P. 817; Fenwick v. Phillips, 3 Metcalfe, page 88; Arnold v. Park, 8 Bush, p. 6; Gearhart v. Almstead, 7th Dana 445.

The principle is well stated in the case of Mannakee v. McCloskey, 23 Ky. L. R. 515, where we said:

"And the doctrine is well settled in this state that the acceptance of a part of a debt due and payable in satisfaction of the whole debt does not operate as a bar to the recovery of the residue; for the debtor being under the obligation to pay the whole debt at the time and the creditor being entitled to receive the whole, agreement that a part shall be satisfaction of the whole is an agreement without consideration and cannot be enforced either in a court of law or equity. See Jones v. Bullitt, 2 Litt. 51; Stringfellow v. Williams, 6 Dana 237. It follows that there was no consideration for appellant's agreement to surrendered the balance due her under the contract of No-

vember 1, 1895, and the court should have given her a judgment for the amount found to be due by that contract, subject to a credit of $1,200.00.''

There was no consideration passing from the insurance companies to the Berryman Realty Company sufficient to support an agreement on the part of the Realty Company to accept a part of the debt due it in full satisfaction of the entire claim unless prepayment of the sum due be so considered and this will be adverted to later. The evidence clearly shows that Berryman, the president of the Realty Company, refused to accept the drafts of the insurance companies except on condition that if the apportionment was incorrect or the Reliance and Delaware held not liable, a new apportionment would be made among the companies liable and the full balance paid by the insurance companies to the Realty Company. No one claims any agreement was actually entered into whereby the partial payment was to be in full accord and satisfaction except what is shown by the written receipt. The *prima facie* case shown by the receipt is entirely overcome by the evidence showing that the receipts were given with the distinct understanding that the amount received was not in full unless the Reliance and Delaware Companies paid the amount assessed against them by the adjusters. It is a principle well recognized that nothing can be regarded as consideration which is not so considered by both parties to the agreement.

As the insurance money was paid and receipt taken before the same was due it is insisted by appellants that such payment is sufficient consideration to support the agreement; but it has been held otherwise by the Supreme Court of the U. S. in the case of Fire Insurance Co. v. Wickham, 141 U. S. 584, where that court said:

''But assuming that the receipts upon their face show a complete settlement of the entire claim for one-half the total amount, what was the consideration for the release of the other half? The only one that is put forward for that purpose is that payment was made five days after proofs of loss were furnished, or fifty-five days before anything was actually due by the terms of the policy. That prepayment of part of a claim may be a good consideration for the release of the residue is not disputed, but it is subject to the qualification that nothing can be treated as a consideration that is not intended as such by the parties. Thus in Philpot v. Gruniger, 14 Wall 570, 577, it is stated that nothing is consideration that is

not regarded as such by both parties. 'To constitute a valid agreement there must be a meeting of minds upon every feature and element of such agreement, of which the consideration is one. The mere presence of some incident to a contract which might, under certain circumstances, be upheld as consideration for a promise, does not necessarily make it the consideration in that contract.' "

It is lastly but earnestly insisted by counsel for appellants that the trial court erred in sustaining a demurrer to the third paragraph of the answer, which is a counterclaim for $4,254.62 claimed to have been paid by mistake of the defendants, insurance companies, to the plaintiff, Berryman Realty Company, on account of alleged injury to certain brick walls of the building damaged by fire. The pleading avers that, "in the ascertainment of the damage and loss on said insured building, the plaintiffs represented to these defendants and to the adjusters representing them in making up said loss proofs, that the walls of that part of the said building inclosing three sides of the stage were a total loss; that these defendants denied said claim, but that the plaintiffs represented to these defendants that the board of commissioners, acting through the commissioner of public safety, had condemned said walls as unsafe by reason of said fire, and that consequently they would have to be torn down to their foundations. Said representations were made by the plaintiffs intending these defendants to rely on same as true, and they, not knowing otherwise, believed it was true. And these defendants settled and paid said loss, including the estimate based upon the fact that said walls were condemned because of damage by said fire and would have to be torn down." The pleading further avers that after the payment of the money the defendants discovered that the walls were not damaged as represented by the plaintiffs, and were not condemned by the public authorities of the city of Lexington, nor torn down; that the defendants paid the money relying upon the representations of the plaintiffs that the walls were so damaged as to be of no value, and in making said payments and settlement of loss they took into consideration and settled upon the assumption that the statements of the plaintiffs regarding the damage to the said walls were true, when in truth and fact they were not so. It will be observed that while the pleading avers that the representations were made to the adjusters into whose hands

the matter of fixing the loss had been placed by both plaintiffs and defendants, there is no averment that the adjusters either relied upon the representations of the plaintiff as to the loss of the walls in question or were misled thereby or were induced to make an allowance on account of said loss by reason of said representations. By agreement of the parties the Southern Adjustment Company and Thomas A. Combs were to find and fix the amount of the loss to the building and this award was to be final and conclusive on the parties. If these adjusters or any one or more of them were deceived or misled by the representations of the plaintiffs concerning the damage to the said walls and were thereby induced or caused to make an allowance on account of said loss which was not justified by the actual conditions, and these facts had been properly averred, the pleading would not have been subject to demurrer, but as no averment to this effect is contained in the pleading, no cause of action was stated by the defendants against the plaintiffs and the demurrer to the counterclaim was properly sustained.

The judgment is affirmed as to the Old Colony Insurance Company, and the motions for appeal made by the Henry Clay Insurance Company, Aetna Insurance Company, Hartford Fire Insurance Company, Milwaukee Mechanics Insurance Company and the Imperial Assurance Company are denied and the judgments affirmed.